IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENITEC AUSTRALIA LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-174-JJF |
| ) | |
| NUCLEONICS, INC., ) | CONFIDENTIAL – |
| ) | FILED UNDER SEAL |
| Defendant. ) | |

**BENITEC AUSTRALIA LTD.'S ANSWERING BRIEF TO NUCLEONICS, INC.'S
MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER**

John W. Shaw (No. 3362)
Kevin M. Baird (No. 4219)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

*Attorneys for Plaintiff
Benitec Australia Ltd.*

OF COUNSEL:

Marc R. Labgold, Ph.D.
Kevin M. Bell
Scott A.M. Chambers. Ph.D.
PATTON BOGGS LLP
8484 Westpark Drive
McLean, Virginia 22102
(703) 744-8000

DATED: March 3, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. NATURE AND STAGE OF PROCEEDINGS ..... 1

II. SUMMARY OF ARGUMENT ..... 1

III. FACTS ..... 2

ARGUMENT ..... 3

IV. THE COURT MUST APPLY RULE 16(B)'S "GOOD CAUSE" PLEADINGS AMENDMENT STANDARD, NOT RULE 15(a)'S MORE LIBERAL STANDARD. ..... 3

V. NUCLEONICS' MOTION IS UNTIMELY AND ITS JUSTIFICATION FOR ITS DELAY IS FALSE. ..... 4

A. Nucleonics Has Long Been in Possession of the Documents Upon Which It Relies – Documents Which Actually Establish That No Third Party Has Ever Claimed to be an Inventor of the '099 Patent's Technology. ..... 4

B. Nucleonics Failed to Diligently Comply With the Court's Scheduling Order and Should Not Now Be Allowed to Amend It Due to Its Dilatoriness. ..... 7

VI. THERE IS NO "GOOD CAUSE" UPON WHICH NUCLEONICS' PROPOSED AMENDMENTS ARE BASED. ..... 7

A. No Party Has Ever Disputed The Fact That Drs. Graham and Rice are the Inventors of the '099 Patent's Claimed Animal Technology. ..... 8

VII. ALLOWING NUCLEONICS' AFFIRMATIVE DEFENSES AND COUNTERCLAIMS NOW WOULD UNFAIRLY PREJUDICE BENITEC. ..... 11

VIII. NUCLEONICS' MOTION IS MADE FOR THE BAD FAITH PURPOSE OF DELAYING AND EXPANDING THE PRESENT LITIGATION. ..... 12

IX. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## CASES

*Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984).................................................................4, 12

*Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929 (3d Cir.1984) ...............................................4, 12

*Darcy v. North Atlantic & Gulf S. S. Co.*, 78 F. Supp. 662 (D. Pa. 1948)......................................13

*Dilmar Oil Co. V. Federated Mutual Insurance Co.*, 986 F. Supp. 959 (D.S.C.1997), *aff'd* 129 F.3d 116 (4th Cir. 1997) ...............................................................................................7

*Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000)...................................4

*Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003) ..............................4

*Gonzalez v. Comcast Corp.*, Slip Copy, 2004 WL 2009366 (D. Del. 2004) ...................................7

*Matlack, Inc. v. Hupp Corp.*, 57 F.R.D. 151 (E.D. Pa. 1972).........................................................13

*Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858 (D. Del. 1982) ................................................................................................................................11, 12

## STATUTES

Fed. R. Civ. P. Rule 9(b)...................................................................................................................2

Fed. R. Civ. P. Rules 11...................................................................................................................2

Fed. R. Civ. P. Rule 15(a)................................................................................................................3

Fed. R. Civ. P. Rule 16(b)............................................................................................................2, 3

Federal Practice and Procedure § 1522.1 (2d ed. 1990) ..................................................................7

Plaintiff, Benitec Australia Ltd ("Benitec") respectfully submits this Answering Brief in Opposition to the defendant, Nucleonics, Inc.'s ("Nucleonics") Motion for Leave to File a First Amended Answer.

## I. NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement case involving U.S. Patent No. 6,573,099 B2 ("the '099 patent"). Benitec and Nucleonics are the only parties remaining upon defendants Ambion, Inc. and Genscript Corporation's stipulated dismissals from the case. (D.I. 44, D.I. 48). The Court's July 14, 2004 Rule 16 Scheduling Order established October 8, 2004 as the discovery cutoff date and November 23, 2004 as the pleadings amendment deadline. (D.I. 27). The parties have been allowed an extended discovery period to address issues concerning third party discovery and contention interrogatories. (D.I. 74). On February 3, 2005, this Court held a discovery hearing during which this Court heard argument concerning Nucleonics' motion to compel discovery from two Australian governmental research agencies. (D.I. 93). While Benitec voiced its concerns that Nucleonics was using that motion to compel as a backdoor attempt to inject new issues into the case, Nucleonics denied any such action and at no time during the hearing did Nucleonics' counsel apprise the Court of Nucleonics' intention to amend its answer to add seven new counterclaims and two new affirmative defenses.[1]

## II. SUMMARY OF ARGUMENT

Nucleonics moves this Court for leave to amend its answer to add seven new counterclaims and two new affirmative defenses eleven (11) months after this case was filed by

---

[1] Nucleonics misleadingly moves the Court to amend its Answer to add additional affirmative defenses. Nucleonics is silent with respect to the fact that it now, *without any justification*, seeks to add counterclaims pertaining not only to the inventorship issue, but also counterclaims of non-infringement and invalidity. Nucleonics attempt to sneak such counterclaims into this case at this late date without any justification should be denied.

1

Benitec and seven (7) months after the jointly proposed Scheduling Order was entered by the Court. Nucleonics' motion should be denied on both procedural and substantive grounds for the following reasons:

(1) the premise upon which Nucleonics' motion is based (*e.g.*, that the patent-in-suit fails to name all true inventors) is demonstrably false;

(2) Nucleonics' motion comes three months after the pleadings amendment deadline set in this case and nearly seven months after Nucleonics was on notice that the issues raised in its proposed affirmative defenses and counterclaims existed and had been pled by a codefendant with Benitec's approval;

(3) Nucleonics' motion is made with prejudicial and bad faith intent to needlessly expand this litigation to involve foreign third parties from whom Nucleonics has had difficulty seeking discovery; and

(4) Nucleonics' motion does not satisfy Fed. R. Civ. P. Rule 16(b)'s "good cause" standard for amending this case's Scheduling Order or Rule 15(a)'s more liberal standard for amending pleadings.

### III.  FACTS

The Court's Scheduling Order provided ample time for the parties to amend their pleadings to allege any claim or defense they might have. Nucleonics now seeks leave to amend well past the Court's permitted deadline to do so, asserting that it could not do so previously. Nucleonics claims that it only just became aware in January 2005 of the facts it relies upon and claims that it could not have alleged its proposed counterclaims and affirmative defenses before now without violating Fed. R. Civ. P. Rules 9(b) and 11. However, Nucleonics' assertions are demonstrably false. As Benitec advised the Court during the February 3, 2005 discovery conference (D.I. 93 at 34), Nucleonics has been in possession of the facts and indeed the specific

2

documents it relies upon since at least September 2004. Thus, Nucleonics has no procedural basis for its untimely motion for leave to amend. Rather, Nucleonics' motion is just one more tactical step to intentionally delay the trial of this matter.

Additionally, Nucleonics' motion lacks a substantive basis. The crux of Nucleonics' argument is that the

MATERIAL
REDACTED

## ARGUMENT

IV.  THE COURT MUST APPLY RULE 16(B)'S "GOOD CAUSE" PLEADINGS AMENDMENT STANDARD, NOT RULE 15(A)'S MORE LIBERAL STANDARD.

On July 14, 2004, this Court entered its Rule 16 Scheduling Order mandating that "[a]ll motions to amend the pleadings shall be filed on or before the close of fact discovery on November 23, 2004." (D.I. 27). Nucleonics has moved under the liberal standard set forth in Fed. R. Civ. P. Rule 15(a) and ignores Rule 16(b)'s more stringent standard which requires that "[a] schedule shall not be modified except on a showing of good cause." Fed. R. Civ. P. Rule

3

16(b). The Court must consider Nucleonics' request under Rule 16's standard before considering it under Rule 15(a)'s standard. *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 339-40 (3d Cir. 2000) (affirming district court's denial of party's motion for leave to amend its pleading under Rule 16(b)'s "good cause" standard rather than Rule 15(a)'s more liberal standard where party sought to amend after the pleadings amendment deadline set forth in district court's Scheduling Order); *see also, Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) (Farnan, D.J.) (acknowledging that Rule 16(b) criteria must be met to amend after deadline set forth in Scheduling Order). Under the proper Rule 16 standard, Nucleonics' motion must be denied.[2]

V.  **NUCLEONICS' MOTION IS UNTIMELY AND ITS JUSTIFICATION FOR ITS DELAY IS FALSE.**

   A.  **Nucleonics Has Long Been in Possession of the Documents Upon Which It Relies – Documents Which Actually Establish That No Third Party Has Ever Claimed to be an Inventor of the '099 Patent's Technology.**

In its supporting memorandum of law, Nucleonics claims that it wasn't until January 28, 2005 that Benitec produced "[d]ocuments beginning to reveal the full scope of the Australian inventorship dispute." (D.I. 92, at 1-2). This assertion is demonstrably false. The "critical" documents relied upon by Nucleonics in its motion were produced to Nucleonics on or before September 30, 2004 and were even produced by Nucleonics to Benitec in this litigation. The table shown in attached Exhibit 1 shows Benitec's document production number ranges for the

---

[2] Nucleonics' motion also fails under the more liberal Rule 15 standard. Logically, if Nucleonics cannot justify its motion under Rule 15(a)'s standard, it cannot meet Rule 16(b)'s requirements. Under Rule 15's liberal amendment philosophy, the district court may deny leave to amend if a party's "delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Id.; see also, Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir.1984). Though not part of a Rule 16(b) "good cause" analysis, these bases provide an excellent framework within which to consider Nucleonics' motion.

4

relevant documents relating to the Australian Opposition inventorship dispute produced by Benitec during fact discovery in August and September 2004, nearly three months before the pleadings amendment deadline and nearly five months before Nucleonics' motion. (Ex. 1).

Included in the production to Nucleonics was the correspondence relied upon by Nucleonics as Exhibits 2 and 3 to its supporting brief as well as the settlement agreement concerning the Australian inventorship dispute.³ Nucleonics' motion relies almost entirely on two letters exchanged between the Commonwealth Scientific and Industrial Research Organisation ("CSIRO") and the Queensland Department of Primary Industries ("QDPI") representatives, Pat Walsh and Dr. Rosemary Clarkson. (D.I. 92, Ex. 2 and 3). Nucleonics laments **MATERIAL REDACTED**

Nucleonics fails to tell the Court, however one of these letters was produced to Nucleonics no later than September 2004. (Ex. 2, (B2533 – 34)). Perhaps Nucleonics' rhetoric stems from Exhibit 3 to its brief, as a copy of that letter was produced with the Bate Stamp shown in January 2005. Another copy of that very same letter was produced in September 2004, however, which Nucleonics conveniently ignores. Even so, these letters contain unequivocal statements by CSIRO's Mr. Walsh that

**MATERIAL REDACTED**

---

³ As discussed in the following section, **MATERIAL REDACTED**

⁴ Thus, irrespective of when Nucleonics' received the

⁴ Benitec does not deny that the "copy" attached as Ex. 3 to Nucleonics' motion was produced again in January 2005. However the date of that production is entirely irrelevant given the fact that the same document was produced by Benitec no later than September 2004. (Ex. 3, hereto).

5

relevant documents, they should have dissuaded Nucleonics from bringing its motion to compel. They certainly do not dispute the requested amendment and corresponding enlargement of the scope of the pending litigation.

In apparent anticipation of Benitec's response, Nucleonics misleadingly claims that only "[v]ery small excerpts of the Opposition and subsequent Settlement were produced in late August and September amidst thousands of other documents." (D.I. 92, at 2). Reading this assertion, one would logically expect that Benitec had only produced a few pages of the relevant materials in conjunction with boxes of documents. Nucleonics' assertion could not be farther from the truth. Indeed, Benitec produced over 1,200 pages of documents from the Australian Opposition. This is far from the "very few" pages "amidst thousands of other documents" that Nucleonics would have this Court believe.

Of critical importance to the pending motion, the 1,200 pages produced in August and September 2004 included CSIRO's Statement of Ground and Particulars of Opposition to the '316 patent application in the Australian Patent Office – the very document that formally alleges the claimed inventorship dispute. (Ex. 4 (B2507 – 22)). So, too, was the '316 application at the heart of the Australian Opposition,[5] the heads of agreement (Ex. 5 (B1482-1510)), the formal settlement document resolving the Australian dispute (Ex. 6 (B1749 – 1806)) and the tripartite deed (Ex. 7 (B1682-1738)). Incredibly, CSIRO's filing with the Australian Patent Office and the '316 application were also produced *by Nucleonics* to Benitec in this litigation. (Ex. 8 (NUC 33085 – NUC 33092), Ex. 9 (NUC 6409 – 6564)). These documents, individually and in combination, contained all of the information that Nucleonics admits was "sufficient information to satisfy itself, and Rule 11."

---

[5] The application in question was published as WO99/49029 and PCT/AU99/00195. A copy was produced to Nucleonics bearing production nos. B2567-715.

Accordingly, Nucleonics' has no good faith justification for its untimely motion to amend.

### B. Nucleonics Failed to Diligently Comply With the Court's Scheduling Order and Should Not Now Be Allowed to Amend It Due to Its Dilatoriness.

Nucleonics is far less than forthcoming in the excuses it raises for its belated request. The undisputed record shows that Nucleonics was in possession of documents directly from the Australian Opposition at least as early as September, 2004. None of Nucleonics' alleged bases for its motion establishes the good cause required to ignore deadlines in the Scheduling Order and be granted leave to amend. As this Court has stated,

> [p]roperly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. *Dilmar Oil Co. V. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C.1997), *aff'd* 129 F.3d 116 (4th Cir. 1997) (citing 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 1522.1 at 230-31 (2d ed. 1990)). Instead of focusing on why, despite diligent effort, [the movant] could not have asserted [its] motion at an earlier time, within the scheduling order guidelines, [the movant] focus[es] on why [it] believe[s the non-moving party] will not be unduly prejudiced if [its] motion is granted. These arguments do not establish good cause, as defined above, for this remarkably late motion for leave to amend.

*Gonzalez v. Comcast Corp.*, slip op, 2004 WL 2009366 at *1 (D. Del. 2004). (Ex. 10). Here, too, the movant offers no valid excuse for its delay and the motion must be denied.

### VI. THERE IS NO "GOOD CAUSE" UPON WHICH NUCLEONICS' PROPOSED AMENDMENTS ARE BASED.

In addition to its procedural failings, Nucleonics' proposed amendments are premised upon two falsehoods: (1) other individuals are co-inventors with Michael Graham and Robert Rice with regard to the '099 patent's modification of gene expression in animals invention and (2) Benitec failed to disclose these other purported inventors to the PTO during the prosecution of the '099 patent's application. Because there has never been any dispute about who actually

7

invented the '099 patent's novel subject matter, there was never any "inventorship dispute" to report to the PTO. Accordingly, Nucleonics' alleged "inventorship dispute" does not exist and its motion is futile.

### A. No Party Has Ever Disputed The Fact That Drs. Graham and Rice are the Inventors of the '099 Patent's Claimed Animal Technology.

It is undisputed that the '099 patent's claims are drawn to modification of gene expression in **animals**.[6] The Australian Opposition addressed in Nucleonics' motion papers concerned Australian Patent Application No. 743316 ("the '316 patent application").[7] The '316 application (and the provisional applications on which it relies) is directed to modification of gene expression in animals *and plants*.[8] In essence, the Australian '316 application claims two types of gene modification inventions – one for use with animals ("the animal technology") and one for use with plants "the plant technology"). The evidence submitted to the Australian Patent Office raised inventorship issues only with regard to the plant technology, not the animal technology. Accordingly, Benitec was not obliged to disclose the Australian inventorship dispute to the PTO because any such dispute did not concern the '099 patent's invention, namely the *animal* technology.

---

[6] More specifically, the '099 patent claims an invention relating to, inter alia, "[a]n isolated genetic construct which is capable of delaying, repressing or otherwise reducing the expression of a target gene in an animal cell which is transfected with said genetic construct . . . ." (D.I. 1, Ex. 1 at col. 25-28).

[7] This application is formally identified as application number 199929163 and WIPO No. WO99/49029. The '316 patent application claims the priority date of March 20, 1998 from Australian provisional Patent Application No. PP2492 and PP2499.

[8] More specifically, the '316 application and the provisional patent applications from which it depend, PP2492 and PP2499, claim an invention relating to "a method of modifying gene expression and to synthetic genes for modifying endogenous gene expression in a cell, tissue or organ of a transgenic organism, in particular a transgenic animal or plant." (Ex. 9). Therefore, the '316 application -- the Australian application – is directed to *both* animal and plant technologies whereas the U.S. '099 patent-in-suit, is limited to animals.

8

The Australian Opposition commenced on July 24, 2002 when CSIRO filed a Statement of Ground and Particulars of Opposition to the '316 patent application in the Australian Patent Office. (Ex. 4 (B2507 – 22)). In its Opposition papers, CSIRO alleged that the '316 patent application improperly listed Michael Graham and Robert Rice as the inventors. (*Id.* at p. 3) (B2509)). CSIRO contended that the true inventors included Peter Waterhouse and Ming-Bo Wang. (*Id.* (B2509)). CSIRO never challenged inventorship with regard to the claimed invention concerning the animal technology, but strenuously challenged the inventorship related to the plant technology. (*See, e.g.*, Ex. 2 (B2533 – 34), Ex. 11 (B15927 – 29)) Indeed, CSIRO submitted Declarations of five CSIRO employees, each claiming that Drs. Graham and Rice were not the only inventors of the claimed *plant* technology.[9] CSIRO never claimed that any person other than Drs. Graham and Rice invented the technology as it applies to the animal technology.

In its supporting memorandum of law, Nucleonics cites a series of letters between Pat Walsh of CSIRO and Dr. Rosemary Clarkson of QDPI in which Mr. Walsh claims

MATERIAL REDACTED (D.I. 92, Ex. 2 (B15941)) and 3 (B15928)). In particular, Nucleonics points to the language stating that

MATERIAL REDACTED (D.I. 92, Ex.

---

[9] These Declarations support CSIRO's claim that because Michael Graham signed an Intellectual Property Acknowledgement and Undertaking, all inventions made by Graham during his employment were the property of CSIRO. (*See*, Ex. 12 (B6540 – 45)). CSIRO alleged that CSIRO employees (Peter Waterhouse, Ming-Bo Wang and Michael Graham) reduced the invention to practice prior to July 19, 1996; *i.e.*, when Graham was a CSIRO employee. *Id.* The supporting Declarations of CSIRO employees Geoffrey Alan Ellacott, Peter Waterhouse, Robert DeFeyter, Ming-Bo Wang, and Neil Andrew contained presentations, statements and copies of notebooks to evidence that CSIRO conceived of and reduced to practice use of the *plant technology*. (*See, without exhibits, e.g.*, Ex. 13 (B2401 – 11), Ex. 14 (B6151 – 92), Ex. 15 (B6487 – 530), Ex. 16 (B7177 – 97), Ex. 17 (B7390 – 403)).

9

3 (B15928)). Conspicuously, Nucleonics ignores that Mr. Walsh, on two occasions *within the exhibits Nucleonics cites*,

Specifically, Walsh acknowledges that: **MATERIAL REDACTED**

(D.I. 92, Ex. 2 (B15940, second-to-last sentence of second paragraph), *see also*, D.I. 92, Ex. 3 (B15942, first sentence of third paragraph)). Thus, Nucleonics' own "proofs" demonstrate that [10]

**MATERIAL REDACTED**

[11] (*See* Exs. 5-7).

As reflected in these documents,

---

[10] Ironically, the correspondence from Mr. Walsh that Nucleonics centers its motion around is on CSIRO *Plant Industry* letterhead. (Exs. 2-3; *see also*, Exs. 11-12).

[11] **MATERIAL REDACTED**

10

VII.  **ALLOWING NUCLEONICS' AFFIRMATIVE DEFENSES AND COUNTERCLAIMS NOW WOULD UNFAIRLY PREJUDICE BENITEC.**

Nucleonics' untimely motion is nothing more than an improper attempt to expand the scope of the present litigation to cause further delay. Allowing such a fundamental shift in Nucleonics' position as the limited-purpose fact discovery extension period draws to a close would severely prejudice Benitec by immeasurably expanding the litigation. Allowing Nucleonics' proposed claims and defenses would allow Nucleonics to open the door in this litigation and welcome argument over an irrelevant dispute that was soundly resolved in the Australian Opposition.

Nucleonics cannot meet its burden of showing that the proposed amendment is justified. It is undeniably untimely, as evidenced by the fact that Nucleonics had possession of what Nucleonics admits was "sufficient information to satisfy itself, and Rule 11" as early as August and September 2004. Moreover, the undisputed facts concerning this "case within a case," as discussed *supra*, prove that no inventorship dispute exists concerning the '099 patent's claimed subject matter. Thus, in addition to being untimely, Nucleonics' proposed amendment is futile. Allowing Nucleonics to amend at this late date would require several additional months of litigation, several additional months of Nucleonics' continued infringement and hundreds of thousands of dollars in foreign and domestic legal fees and costs.

Even if this Court rules in Nucleonics' favor on its other pending motions regarding CSIRO and QDPI and Benitec is forced to otherwise incur this additional time and expense, it is still appropriate for the Court to deny Nucleonics' motion because of Nucleonics' inexcusable lateness, Nucleonics' bad faith motive and the lack of any substantive basis for its motion. *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858, 865 (D. Del. 1982) (factors other than prejudice to non-moving party can form basis for denying motion for leave to

11

amend) (*citing, Cornell & Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978)); *see also, Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984).

## VIII. NUCLEONICS' MOTION IS MADE FOR THE BAD FAITH PURPOSE OF DELAYING AND EXPANDING THE PRESENT LITIGATION.

As briefed in Benitec's February 7, 2005 Answer to Nucleonics' motion for discovery of nonparties, Nucleonics has made systematic attempts to expand this litigation. (D.I. 88). It's motion for leave is nothing more than an attempt to justify the irrelevant discovery it is seeking from third party government agencies located in Australia (*See, e.g.* D.I. 77-79). In that motion and in the discussion held during the February 3, 2005 hearing on still other CSIRO and QDPI issues, the Court witnessed Nucleonics' multi-pronged approached to ensnarling CSIRO and QDPI into this case in an effort to cause delay. (D.I. 93).

Even ignoring Nucleonics' apparent digressive intent, Nucleonics' bad faith can be inferred from its unexplained delay in bringing the instant motion. To this end, this Court has stated:

> In the instant case it is not necessary for the Court to find that plaintiff has acted in bad faith in seeking the amendment. It is clear that plaintiff has provided no satisfactory explanation for its long delay in filing its motion to amend. Undue delay which is not satisfactorily explained is equivalent to bad faith.

*Rose Hall*, 93 F.R.D. at 865 (D. Del. 1982).

For the reasons stated herein, Nucleonics cannot justify its delay. It had the relevant documents and was otherwise on notice of the issues raised in the Australian Opposition no later than September 2004. This, coupled with Nucleonics blatant misrepresentation of these facts, demonstrates the bad faith with which Nucleonics moves this Court.

Also, a shift in a party's theory of a case, as the one Nucleonics' moves for, "should be denied, even in the absence of prejudice, where the party seeking to interpose it has been guilty of flagrant abuse, bad faith, or truly inordinate and unexplained delay." *Matlack, Inc. v. Hupp Corp.*, 57 F.R.D. 151, 163 (E.D. Pa. 1972); *see also, Darcy v. North Atlantic & Gulf S. S. Co.*, 78 F. Supp. 662, 664 (D. Pa. 1948) (denying defendant's motion to amend counterclaim where "defendant had full knowledge of the newly alleged facts at time the original answer was filed" and where "defendant's long delay in seeking to amend its answer is patently not due to oversight, inadvertence or excusable neglect"). Here again, Nucleonics unjustified delay and its false and misleading assertions concerning same, mandate a denial of the instant motion to amend.

## IX. CONCLUSION

For the foregoing reasons, Benitec respectfully requests that this Court deny Nucleonics' Motion for Leave to File a First Amended Answer in its entirety.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/*
John W. Shaw (No. 3362)
Kevin M. Baird (No. 4219)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

*Attorneys for Plaintiff Benitec Australia Ltd.*

13

OF COUNSEL:

Marc R. Labgold, Ph.D.
Kevin M. Bell
Scott A.M. Chambers. Ph.D.
PATTON BOGGS LLP
8484 Westpark Drive
McLean, Virginia 22102
(703) 744-8000

DATED: March 3, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2005, I caused to be electronically filed a true and correct copy of BENITEC AUSTRALIA LTD.'S ANSWERING BRIEF TO NUCLEONICS, INC.'S MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Paul E. Crawford, Esquire
> Connolly Bove Lodge & Hutz, LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE 19899

I further certify that on March 3, 2005, I caused a copy of BENITEC AUSTRALIA LTD.'S ANSWERING BRIEF TO NUCLEONICS, INC.'S MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER to be served by hand-delivery on the following counsel of record:

> Paul E. Crawford, Esquire
> Connolly Bove Lodge & Hutz, LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE 19899

I further certify that on March 3, 2005, I caused a copy of BENITEC AUSTRALIA LTD.'S ANSWERING BRIEF TO NUCLEONICS, INC.'S MOTION FOR LEAVE TO FILE A FIRST AMENDED ANSWER to be served on the following non-registered participants in the manner indicated below:

> **BY FEDERAL EXPRESS**
>
> Jason A. Lief, Esquire
> Morgan, Lewis & Bockius LLP
> 101 Park Avenue
> New York, NY 10178-0060

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Kevin M. Baird (No. 4219)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
kbaird@ycst.com

*Attorneys for Benitec Australia Ltd.*