# Exhibit A



Not Reported in F.Supp.2d
2004 WL 1043202 (D.Del.)
(Cite as: 2004 WL 1043202 (D.Del.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Lynda MALONEY and Maria Rendina, Plaintiffs,
v.
Thomas P. GORDON and Sherry L. Freebery, both individually and in their
official capacities, and New Castle County, a municipal corporation,
Defendants.
No. Civ.A. 03-999-KAJ.

May 4, 2004.
Thomas S. Neuberger, Stephen J. Neuberger, Thomas S. Neuberger, P.A., Wilmington, Delaware, for Plaintiffs.

Albert H. Manwaring, IV, Pepper Hamilton LLP, Wilmington, Delaware, for Defendant Thomas P. Gordon.

James S. Green, Seitz, VanOgtrop & Green, P.A., Wilmington, Delaware, for Defendant Sherry L. Freebery.

William W. Bowser, Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, for Defendant New Castle County.

MEMORANDUM OPINION

JORDAN, J.

*1 This is a civil rights dispute involving allegations by two former employees (collectively the "Plaintiffs") of New Castle County, Delaware (the "County") who claim their free speech rights were infringed and that retaliatory employment action was taken against them because they were cooperating with a criminal investigation of corruption in the County's government. (*See* Docket Item ["D.I."] 1 at ¶ 1.) Plaintiff Maria Rendina is alleged to have served as an Executive Assistant to the County Executive, i.e., the County's elected chief executive officer, defendant Thomas P. Gordon, while plaintiff Lynda Maloney is alleged to have served as an Executive Assistant to the County's Chief Administrative Officer, defendant Sherry L. Freebery. (*Id.* at ¶¶ 8-9.) The defendants are Gordon, Freebery, and the County (collectively the "Defendants"). Presently before me are the parties' competing positions on the appropriate form of protective order to be entered in this case. (*See* D.I. 21, 22, 23, 24.) For the reasons that follow, I will enter an order more narrowly drawn than the Defendants seek and more in keeping with the greater public access contemplated by the form of order submitted by the Plaintiffs.

Background

Without attempting a full rendition of the allegations in the Complaint, [FN1] I note the following as background. The Plaintiffs allege that they are whistleblowers who have assisted in exposing corruption in defendants' Gordon and Freebery's administration of the County's government. (*See id.* at ¶ 18.) Among other things, they claim that, in violation of state statutes and long-standing County policies and procedures, Gordon and Freebery forced County employees to work on partisan political campaigns during normal business hours, while those employees were being paid their regular County salaries. (*Id.* at ¶ 12.) Because Gordon and Freebery allegedly rejected the Plaintiffs' objections to County employees being so used (*see id.* at ¶¶ 16-17), and because the Plaintiffs felt "they could not in good conscience sit idly by and look the other way while the taxpaying public was cheated and laws were broken by public servants[,]" (*id.* at ¶ 18) the Plaintiffs approached the U.S. Attorney's Office, the Federal Bureau of Investigation, and the Internal Revenue Service and told them of their concerns. (*See id.* at ¶ 19.) The Plaintiffs claim that they cooperated with federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1043202 (D.Del.)
(Cite as: 2004 WL 1043202 (D.Del.))

Page 2

law enforcement officials in collecting evidence against Gordon and Freebery and that, on September 24, 2002, they received subpoenas to testify before a federal grand jury. (*Id.* at ¶¶ 22-23.) They told Gordon and Freebery of the subpoenas and, on October 9, 2002, appeared before the grand jury as required by the subpoenas. (*Id.* at ¶¶ 24-25.)

> FN1. The background information herein is based on the allegations in the Complaint and does not constitute findings of fact.

In the Plaintiffs' view, they were, in their cooperation with law enforcement, speaking out on matters of public concern and they did so in a non-disruptive manner. (*Id.* at ¶¶ 26-29.) Nevertheless, the Plaintiffs say, Gordon and Freebery were antagonized by the Plaintiffs' exercise of their free speech rights and set out to retaliate against them. (*Id.* at ¶¶ 31-32.)

*2 As the defendants have been quick to note (D.I. 22 at 1; D.I. 24 at 1), this is not the only suit pending in this Court against them. In another action, *Reyes v. Freebery*, C.A. No. 02-1283-KAJ, a current County police officer and a former County police officer have sued Freebery and the County, as well as a former Colonel of the County Police, alleging a variety of civil rights and discrimination claims. (See *Reyes* Docket Item 6 at ¶¶ 60-99.) The same firm that represents the Plaintiffs in the present case also represents the plaintiffs in the *Reyes* case, a fact the Defendants say is noteworthy because the *Reyes* case involves alleged violations of the spirit and letter of a protective order issued in that case. (See, e.g., *Reyes* Docket Items 82, 94.) In the Defendants' view, "Plaintiffs' counsel's litigation tactics in this case as well as in the *Reyes* ... litigation provide ample grounds to enter a protective order at this stage of the proceedings ." (D.I. 24 at 1.)

Both parties agree that some form of protective order is warranted in this case. The Plaintiffs' and the Defendants' submissions differ chiefly on the following two points: (1) the Plaintiffs have described certain varieties or classes of information which are to be considered (D.I. 21 at Ex. A. ¶ 1) while the Defendants have stated only that any "non-public ... information that the party has a good faith belief constitutes or contains confidential or proprietary information" may come under the protective umbrella of the Order (D.I. 22 at Ex A. ¶ 2), and (2) the Plaintiffs' form of Order would leave unprotected, until otherwise ordered by the court, any information as to which there is a dispute about confidentiality (D.I. 21 at Ex. A. ¶ 7), while the Defendants' form would provide protection for such information, pending the court's review on the confidentiality dispute (D.I. 22 at Ex. A. ¶ 8).

Discussion

Protective Orders have become a common feature of litigation in this court, to protect a wide variety of confidential information that is typical in cases that are filed here. Patent cases, for example, regularly involve proprietary information relating to a party's scientific research and development, as well as its financial records. Corporate and commercial disputes likewise frequently involve the disclosure of confidential financial information and inquiry into sensitive business planning. In cases alleging civil rights violations, plaintiffs sometimes attempt to gain access to information regarding the government's treatment of third parties. In employment cases, efforts to demonstrate discrimination or retaliation can lead to demands for information regarding an employer's treatment of other employees. Determining how to address a private litigant's demand for disclosure of what would otherwise rightly remain quietly on an opponent's computer hard drive or in a file drawer has thus become a matter of contention in many cases.

*3 Fortunately, the right balance is often struck by the parties themselves, negotiating an appropriate agreement and then soliciting the court's imprimatur. Occasionally, the parties cannot agree, or, more troubling, they may agree to a form of protective order but do so without proper regard for the fundamental rule that the courts of the United States are public fora and, in every case, there is a public interest in open access to court proceedings that must be taken into account. In such cases, it falls to the court to sort out whether a protective order is called for and, if so, what the contours of the order should be.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1043202 (D.Del.)
(Cite as: 2004 WL 1043202 (D.Del.))

Page 3

In making those determinations, a judge must guided by certain well-established principles. First, as just noted, there is a common law right of the public to have access to the courts, part and parcel of which is "an independent right for the public to view proceedings and to inspect judicial records." *See In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir.2001) (citation omitted). Any time a protective order restricts that access, the public's right is curtailed and an appropriate balancing of competing interests is required. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir.1994) (the court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled ...") (internal citation and quotation marks omitted).

A closely related second point is that protective orders, though a regular feature of litigation, are not a matter of right. On the contrary, under Federal Rule of Civil Procedure 26(c), protective orders are only to issue upon "good cause shown" and within what "justice requires". Fed.R.Civ.P. 26(c); *see id.* at 786 ("... [I]t is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection.") (citation omitted). What constitutes "good cause" and what justice requires will naturally vary from case to case, but that variability doesn't render those touchstones meaningless.

Third, the burden of showing that good cause exists and that the appropriate balancing should result in a protective order rests on the party seeking protection. There must be a "particular need for protection" and "the party seeking confidentiality has the burden of showing injury with specificity." *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir.2000) (internal citations and quotation marks omitted).

In some circumstances, "[t]he injury shown ... need be no more than 'embarrassment'; thus, a party need not establish a monetizable injury." *Id.* at 73 (citation omitted). But "[w]hile preventing embarrassment may be a factor satisfying the 'good cause' standard, an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." *Pansy*, 23 F.3d at 787 (citation omitted). And that already high burden becomes higher still, formidably so, when the source of embarrassment is associated with allegations of official corruption. "Disclosing corruption, fraud, and illegality in a government agency is a matter of significant public concern." *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823, 829 (3d Cir.1994) (citation omitted). Hence, "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy*, 23 F.3d at 787 (citation omitted).

*4 In light of those principles, it is clear that the Defendants' form of order is drawn too broadly and without sufficient justification. It treats the present action as if it were a typical patent or commercial dispute. (*See* D.I. 22 at 1; "Defendants' proposed protective order is virtually identical to the protective order entered by this Court ... in [a recent patent case].") This is not a typical case among private litigants. It involves serious allegations of public corruption. [FN2] It may be stating the obvious, but it bears emphasis that "the public has a substantial interest in the integrity or lack of integrity of those who serve them in public office." *United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir.1985). This is precisely the type of case in which the court must be most vigilant in guarding the public's right to monitor judicial proceedings. "[T]he public's substantial interest in unearthing governmental improprieties requires courts to foster legitimate whistleblowing." *Feldman*, 43 F.3d at 830; *cf. Pansy*, 23 F.3d at 785 ("Disturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders.") (footnote omitted).

> FN2. "Corruption" is, of course, the Plaintiffs' characterization of the alleged behavior by Gordon and Freebery. (*See* D.I. 1 at ¶ 26.) Whether or not the allegations, if proven, actually amount to corruption is not a matter on which I have reached any conclusion or as to which I intend to imply anything at this juncture. It is sufficient for present purposes to note that the allegations of abuse of official power are serious enough to implicate the reduced privacy interests, and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1043202 (D.Del.)
**(Cite as: 2004 WL 1043202 (D.Del.))**

Page 4

correspondingly heightened public interest in disclosure, described in *Pansy*, 23 F.3d at 787.

I will therefore adopt the Plaintiffs' form, with one significant modification. Matters designated confidential will remain so unless and until I determine that the designation is inappropriate. This puts little, if any burden, on the parties, because I fully expect the confidentiality designations to be undertaken with sensitivity to the principles I have outlined here and to be respected by the opposing party, with the understanding that an abuse of the protective order's privileges and responsibilities will lead to its modification, to the potential detriment of the party responsible. To withhold confidential status until I have had an opportunity to review and rule on a disputed designation would naturally lead to the disclosure of information which could otherwise legitimately be designated confidential, the information losing that status for no reason other than a party's inability to acquire immediate court review.

Conclusion

For the foregoing reasons, a protective order based largely on the Plaintiffs' proposed form of order will be entered.

2004 WL 1043202 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:03CV00999  (Docket)
(Oct. 31, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.