REDACTED VERSION OF D.I. 98

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENITEC AUSTRALIA LTD., <br><br> Plaintiff, <br><br> v. <br><br> NUCLEONICS, INC., a Delaware corporation, <br><br> Defendant. | Civil Action No. 04-174-JJF |

## NUCLEONICS REPLY BRIEF IN SUPPORT OF ITS MOTION TO AMEND ITS ANSWER

Paul E. Crawford, Esq. (#0493)
CONNOLLY, BOVE, LODGE
 & HUTZ
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware  19899
Telephone: (302) 658-9141
*Attorneys for Defendant
Nucleonics, Inc.*

Dennis J. Mondolino
Jason A. Lief
Thomas J. Puppa
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY  10178
Telephone: (212) 309-6000
*Attorneys for Nucleonics Inc.*

# TABLE OF CONTENTS

Page

I.  Introduction and Summary of Argument ........................................................................ 1

II. Reply Argument ............................................................................................................. 4

    A.  Benitec's Attempted Animal-Plant Distinction is a Straw-Man: Inventorship of the "Animal" Patent-In-Suit Is at Issue In this Litigation and Was At Issue In Australia ................................................................................. 4

        1.  Nucleonics Pleadings are to Be Taken As True For Purposes of This Motion to Amend; It is Premature to Attempt to Reach the Ultimate Merits: There Has Been No Claim Construction and Limited Discovery ................................................................................. 4

        2.  Benitec Is Incorrect on the Facts: The Australian Inventorship Dispute Did Involve Both Animal and Plant Uses ................................... 5

        3.  Invention of Any Part of the U.S. Patent Claims Makes One An Inventor: Animal Uses Are Only A Part of the Claims-in-Suit ................. 7

        4.  Even if the Australian Dispute Only Related to Plant Inventorship, Benitec Originally Sought Plant Claims in the United States and Never Named the Correct "Plant" Inventors; Benitec's Inequitable Conduct Cannot Be Purged After-the Fact ............................................... 8

    B.  This Motion is Timely Filed ............................................................................... 10

        1.  Discovery Is On-Going ........................................................................... 10

        2.  New Issues and Facts Have Arisen ......................................................... 11

        3.  Amendment Is Liberally Granted, Rule 16(b) Has Not Been Violated and Does Not Change the Rule 15 Standard ............................. 12

    C.  Benitec Will Not Be Prejudiced By the Granting of this Amendment; Nucleonics Will Be Prejudiced By the Denial of this Amendment ..................... 14

III. Conclusion ................................................................................................................... 14

## TABLE OF CITATIONS

Page(s)

**CASES**

Enzo Life Sciences, Inc. v. Digene Corp.,
   270 F. Supp. 2d 484 (D. Del. 2003) .......................................................................... 1, 4, 13

Ethicon, Inc. v. United States Surgical Corp.,
   135 F.3d 1456 (Fed. Cir. 1998) .............................................................................................. 7

Fina Oil & Chemical Co. v. Ewen,
   123 F.3d 1466 (Fed. Cir. 1997) .............................................................................................. 7

In re Lutheran Brotherhood Insurance Products Co.,
   2002 U.S. Dist. LEXIS 20163 (D. Minn. Oct. 7, 2002) ......................................................... 12

Mylan Pharmaceuticals, Inc. v. Kremersurban Develop.,
   2003 U.S. Dist. LEXIS 20665 (D. Del. Nov. 14, 2003) ........................................................ 1, 4

PerSeptive Biosystems Inc. v. Pharmacia Biotech Inc.,
   225 F.3d 1315 (Fed. Cir. 2000) ............................................................................................ 2, 8

The Procter & Gamble Co. v. Nabisco Brands, Inc.,
   125 F.R.D. 405 (D. Del. 1987) ............................................................................................... 14

Trovan Ltd. v. Sokymat SA,
   63 U.S.P.Q. 2d 1865 (Fed. Cir. 2002) .................................................................................... 5

**AUTHORITIES**

35 U.S.C. 119 ................................................................................................................................ 6

Rule 12(b) and 9(b), Fed. R. Civ. P. ............................................................................................. 1

**REDACTED VERSION OF D.I. 98**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENITEC AUSTRALIA LTD., <br><br> Plaintiff, <br><br> v. <br><br> NUCLEONICS, INC., a Delaware corporation, <br><br> Defendant. | Civil Action No. 04-174-JJF |

**NUCLEONICS REPLY BRIEF
IN SUPPORT OF ITS MOTION
TO AMEND ITS ANSWER**

I.   **Introduction and Summary of Argument**

Nucleonics replies here in support of its motion to amend its Answer and add defenses and counterclaims of inequitable conduct and wrongful inventorship.

Benitec's Opposition does not dispute that:

\*   Nucleonics' proposed Amended Answer pleads, on its face, a case of inequitable conduct and wrongful inventorship that satisfies Rule 12(b) and 9(b), Fed.R.Civ.P. – and that is all that is required under Rule 15, as informed by Rule 12.[1];

\*   CSIRO scientists claimed they co-invented the Australian priority patent to the U.S. patent-in-suit; they were not named as inventors of the U.S. patent-in-suit; and those CSIRO scientists did play an inventive role in gene-silencing technology; and

---

[1]   See Enzo Life Sciences, Inc. v. Digene Corp., 270 F. Supp.2d 484, 490 (D. Del. 2003) (Farnan, D.J.) (applying Rules 12(b)(6) and 9 when allowing a proposed inequitable conduct amendment); Mylan Pharmaceuticals, Inc. v. Kremersurban Develop., 2003 U.S. Dist. LEXIS 20665 at *6-7 (D. Del. Nov. 14, 2003) ("for purposes of Rule 15(a) . . . accepting all the well pleaded facts as true . . . the court should apply the same standards as are applied to Rule 12(b)(6) motion to dismiss.").

\*      Benitec never told the U.S. Patent Office about the CSIRO co-inventors or about the Australian inventorship dispute – which involved the Australian priority application to the U.S. patent-in-suit.

Benitec argues – with partial quotes – that it will ultimately prevail because the facts do not support the pleadings and the amendment is late. We respectfully disagree – with their approach and with their facts.

(1) It is inappropriate to look beyond the pleadings in this context. Motions to amend require that the proposed amended pleading be taken as factually correct. A Rule 12 standard applies. Barring legal futility of the facts as plead, amendment is to be granted.

(2) Benitec is incorrect about the facts – the Australian inventorship dispute regarded claims covering animal uses of the gene-silencing technology at issue in the U.S. patent. Beyond this, under U.S. inventorship law, Australian inventors of the gene-silencing techniques (whether used in animals or plants) that are a key part of the claimed U.S. invention are inventors of the U.S. patent-in-suit. Furthermore, Benitec's original U.S. claims did cover plants. Thus, under any scenario, Benitec failed to reveal the true inventors and failed to reveal the Australian dispute to the U.S. Patent Office.

An applicant before the Patent Office is under a duty to reveal all material information regarding patentability. Both the existence of other inventors and, even, the existence of a controversy over inventorship regarding the foreign priority application to the U.S. patent-in-suit should have been revealed to the U.S. Patent Office, but were not. <u>PerSeptive Biosystems Inc. v. Pharmacia Biotech Inc.</u>, 225 F.3d 1315, 1322 (Fed. Cir. 2000) (finding of inventorship fraud affirmed). Furthermore, an applicant is under an obligation to reveal material events in foreign patent offices regarding foreign counterpart applications. Benitec did not reveal anything to the U.S. Patent Office.

(3) The motion to amend is not untimely or prejudicial – fact discovery has not closed and no depositions have been taken. The deadline for amendments in the Court's July 13, 2004 Order is tied to the close of fact discovery. We note the following:

* None of the information that this amendment is based upon was known to Nucleonics at the time of its first Answer on April 30, 2004;

* Numerous key documents were first produced in January 2005 – albeit we were mistaken about some of these documents, others of key relevance clearly are new;

* As far as we can tell, to date the full Australian Opposition has not been produced by Benitec who admit producing only 1,200 pages. Instead, Nucleonics was forced to recently obtain the 6,500 page document and produce it to Benitec (Nucleonics production numbers NUC 29831-36351);

* It was only in January of 2005 that Benitec first stated that it would rely on a 1994 date of priority. As noted in our Opening brief that is significant because now Benitec itself admits that the inventive work was done at CSIRO in 1994 – at a time when Graham was working with the other CSIRO inventors.

There is no prejudice to Benitec from the amendments; by contrast Nucleonics will be denied fundamental defenses if the amendments are denied.

\* \* \* \* \*

We respectfully submit the pleading is proper and timely and should be granted. Although consideration of the underlying merits is inappropriate under Rule 15 and Rule 12, we address below for completeness some of the key underlying facts, as currently known.

II.   **Reply Argument**

   A.   **Benitec's Attempted Animal-Plant Distinction is a Straw-Man: Inventorship of the Gene-Silencing Patent-In-Suit Is at Issue In this Litigation and Was At Issue In Australia**

Benitec argues that the inventorship dispute in Australia (regarding the priority application to the U.S. patent-in-suit) centered on only plants and not animals. (Benitec Answering Brief at 8 - 10). That is not factually correct. Nor would it matter as a matter of law. The distinction between animals and plants is a straw man with respect to this motion for four distinct reasons:

   1.   **Nucleonics Pleadings are to Be Taken As True For Purposes of This Motion to Amend; It is Premature to Attempt to Reach the Ultimate Merits: There Has Been No Claim Construction and Limited Discovery**

Under Rule 15 jurisprudence, the proposed amended pleadings are to be taken as factually correct. See Enzo Life Sciences, Inc. v. Digene Corp., 270 F. Supp.2d 484, 490 (D. Del. 2003) (applying 12(b)(6) and 9 when allowing a proposed inequitable conduct amendment); Mylan Pharmaceuticals, Inc. v. Kremersurban Develop., 2003 U.S. Dist. LEXIS 20665 at *6-7 (D. Del. Nov. 14, 2003) ("for purposes of Rule 15(a) . . . accepting all the well pleaded facts as true . . . the court should apply the same standards as are applied to Rule 12(b)(6) motion to dismiss.").

The proposed amended pleadings allege that the patent claims in suit were invented by other inventors who were deliberately not named; and that the Australian dispute was improperly not revealed to the U.S. Patent Office.

Benitec's arguments that (1) only "plant" inventions were disputed in Australia and (2) the Australian dispute is therefore irrelevant to "animal" claims in the U.S. presume: (1) conclusive knowledge of all the facts and (2) a final claim construction that permits relevant

386806                                  4

REDACTED VERSION OF D.I. 98

inventive contributions to be ascertained – inventorship requires claim construction as a first step.[2]

However, claim construction has not yet occurred in this case. Nor do we have anything approaching full discovery. It is for these very reasons that Rule 15 liberally permits amendment at this stage of a litigation and takes the proposed amendment on its face as factually accurate. Otherwise, all defenses would be discarded as futile before the full information needed to make a final determination existed in the record.

We do know, inter alia, that highly-related patents in Australia (the priority application to the U.S. patent) were subject to a very significant inventorship challenge and that was never reported to the U.S. Patent Office. Wrongful inventorship and inequitable conduct have been properly pleaded. It is inappropriate at this stage to attempt to resolve the ultimate merits.

2. **Benitec Is Incorrect on the Facts: The Australian Inventorship Dispute Did Involve Both Animal and Plant Uses**

On the facts, Benitec is incorrect in its assertions that the Australian inventorship dispute only involved plant uses of the technology and not animal uses.

When CSIRO opposed the Australian patent application, it stated that CSIRO scientists invented the claims which covered both animal and plant uses – as Benitec itself concedes. See Benitec Answering Brief at 8 fn. 8:

> [Australian applications] PP2492 and PP2499 claim an invention relating to "a method of modifying gene expression and to synthetic genes for modifying endogenous gene expression in . . . a transgenic animal or plant."

Indeed, as a basis for priority for the U.S. application, the Australian parent application had to disclose the invention of the U.S. patent-in-suit (animal uses) to comply with the requirements of

---

[2]  Ultimately, determination of inventorship begins with a construction of the claims. Trovan Ltd. v. Sokymat SA, 63 USPQ2d 1865, 1871 (Fed. Cir. 2002).

386806                                5

35 U.S.C. 119. This statutory section requires that a foreign parent application show that the inventors had possession of the invention claimed in the U.S. application when the foreign application was filed.

CSIRO clearly equated plant and animal uses of their gene-silencing technology when they wrote to complain of Graham's inventorship fraud. Conveniently not quoted in Benitec's brief, CSIRO told the patent applicants that:

**REDACTED**

(See Benitec's Answering Brief at Exh. 3 at B15940 – the underlined-bolded part of the quote was omitted from Benitec's quotation in its Answering Brief at page 10).

For purposes of U.S. inventorship law, conception of any part of the claimed invention is what matters. Here the principles as to plants and animals were deemed the same – the underlying concepts of gene-silencing were the same. Those concepts came from CSIRO scientists in addition to named-inventor Graham.[3] Thus, CSIRO wrote to the Australian Patent Office:

> "the true inventors are:
>
>   - Dr. Peter Waterhouse
>
>   - Dr. Ming-Bo Wang
>
>   - Dr. Michael Graham:"

---

[3] For purposes of U.S. inequitable conduct law, a patent applicant cannot narrowly parse what he believes to be material (e.g., matters supposedly relating to plants as opposed to animals) in an attempt to conceal the facts. And indeed, this patent applicant supplied prior art to the Patent Office regarding plant technology – hardly immaterial.

386806                                                  6

The Opposition went on to state:

> "The Opponent is the owner of all patentable inventions developed by Graham during the course of his employment with the Opponent [CSIRO]."

(See Exh. 8 to Benitec's Answering Brief on Nucleonics Bates numbers NUC 33087). Those assertions should have been made known to the U.S. Patent Office. They were not.

### 3. Invention of Any Part of the U.S. Patent Claims Makes One An Inventor: Animal Uses Are Only A Part of the Claims-in-Suit

As a matter of law – even were Benitec's facts correct and they are not – inventorship exists where a contribution is made to the conception of any part of a claimed invention. Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460, 1466 (Fed. Cir. 1998); Fina Oil & Chemical Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("One need not alone conceive of the entire invention, for this would obviate the concept of joint inventorship."). Reduction to practice is not required for inventorship. Fina Oil and Chem. Co. v. Ewen, 123 F.3d 1466, 1474 (Fed. Cir. 1997).

Applying Benitec's version of the facts, contribution to the concepts of the gene-silencing (separate and apart from the animal aspects of the claims) suffices for inventorship. It is clear that the co-inventors at CSIRO played inventive roles in these matters.

### 4. Even if the Australian Dispute Only Related to Plant Inventorship, Benitec Originally Sought Plant Claims in the United States and Never Named the Correct "Plant" Inventors; Benitec's Inequitable Conduct Cannot Be Purged After-the Fact

Even if Benitec were correct that the Australian inventorship dispute involved only plants (which it did not – and for Rule 15 and 12 purposes, Nucleonics' facts should be taken as true), the initial claims to Benitec's U.S. patent-in-suit also covered plant subject matter. Benitec's initial U.S. patent claims – which were sought with only Graham as the named inventor – stated:

386806                                    7

> "1.   A synthetic gene which is capable of modifying target gene expression in a cell, tissue or organ of a prokaryotic or <u>eukaryotic organism</u> . . . .

(Exh. 1 hereto, Initial Claims in U.S. Application 09/100,812 leading to the patent-in-suit at page 46).

<u>Plants</u> and animals are "eukaryotic organisms".[4]

That is to say, when Benitec first applied for this patent and put Graham forward as the sole inventor, Benitec attempted to claim the exact thing (plants) that even Benitec now concedes was developed by other CSIRO scientists. Benitec also concedes that inventorship of the plant subject matter was disputed in Australia. Again, they never told the U.S. Patent Office of the dispute at the time when they were claiming plants.

Benitec's initial inequitable conduct (regarding plant claims) cannot be purged by subsequently amending the claims to limit them to animal subject matter. In <u>PerSeptive Biosystems Inc. v. Pharmacia Biotech Inc.</u>, 225 F.3d 1315, 1322 (Fed. Cir. 2000), the Federal Circuit addressed this very issue holding that one cannot purge inventorship fraud by amending claims:

> PerSeptive's argument that the patent claims were narrowed during prosecution, thereby curing any possible inventorship problem, misses the point. . . . Accepting PerSeptive's argument that the narrowing of the claims here renders immaterial the false statements misdirects the focus of the inquiry: the issue is not inventorship per se, but misinformation about inventorship...

\* \* \* \* \*

In summary:

(1) CSIRO's position was that its scientists invented patent claims covering <u>animal</u> uses. CSIRO claimed inventorship of the principles and fundamental

---

[4]   See Exh. 2 hereto, American Heritage College Dictionary (3d Ed.) at 1046, defining "plant" as: "Any of various photosynthetic, <u>eukaryotic</u> multicellular organisms . . . "

386806                                  8

technology of gene-silencing – which applied generally to both plants and animals according to CSIRO. CSIRO stated that other people (Wang and Waterhouse) at CSIRO were co-inventors of that technology. For purposes of U.S. law that raises significant inventorship issues regarding animal patents;

(2) CSIRO ultimately ended up as a co-owner of the U.S. "animal" patent-in-suit and never withdrew its inventorship accusations despite settling;

(3) Further confirming the link between animal and plant work: <u>today</u> (for the first time as of January 2005), Benitec is claiming that 1994 so-called "plant work" at CSIRO is the basis for a 1994 priority date on the animal patent-in-suit; and

(4) It is undisputed that Benitec never told the U.S. Patent Office of the work of Wang and Waterhouse; never told the Patent Office of the dispute over inventorship regarding the Australian priority patent to the U.S. patent-in-suit; and never told the Patent Office that their animal claims were supposedly based upon "plant work" done in 1994 at CSIRO.

These facts support a claim of improper inventorship with intent to deceive and inequitable conduct. Indeed, there is far more evidence than is needed to support the pleading. Nonetheless, Rule 15 does not weigh the merits when determining whether to grant leave to amend. The Rule 12(b)(6) standard of review applies to the proposed amended pleadings. Taken on the face of the pleadings, Nucleonics' proposed amended Answer properly state defenses and counterclaims as a <u>matter of law</u>. The facts are to be taken as true – and the underlying support shows that they are true. Again, Benitec does not argue that the pleadings are inadequate.

Benitec cannot manufacture a futility argument by misquoting a passage from correspondence surrounding the Australian inventorship dispute. To the contrary, the full quote

shows that both animal and plant cells are implicated in the inventorship and inequitable conduct disputes under U.S. law – and the controversy should have been revealed to the U.S. Patent Office.

### B. This Motion is Timely Filed

#### 1. Discovery Is On-Going

Benitec argues that the motion to amend is untimely. However, none of the information that this amendment is based upon was known to Nucleonics at the time of its first Answer on April 30, 2004. Furthermore, we are still in the midst of fact discovery. This case contemplated 10 depositions per side as part of fact discovery. None have yet taken place and Benitec has refused all depositions by Nucleonics for the past month and indefinitely into the future.

The deadline for amendments was linked to the close of fact discovery. Thus, the July 13, 2004 Order at ¶ 5 stated:

> "all motions to amend the pleadings shall be filed on or before <u>the close of fact discovery</u> on November 23, 2004".[5]

Of course, fact discovery did not end on November 23, 2004. On December 10, 2004, the Court extended discovery, stating:

> "Nucleonics correctly interprets Paragraph 3(a) of the Scheduling Order, however, Benitec has either grossly misinterpreted the paragraph or ignored it. The result is that the discovery provisions of the Scheduling Order must be extended."

Thus, we find ourselves still within on-going fact discovery and we respectfully submit that the motion to amend is timely filed.

#### 2. New Issues and Facts Have Arisen

Furthermore, there is no question that new issues were first raised in January 2005 – after the original November 23, 2004 fact-discovery deadline:

386806                                                    10

* Benitec's January 2005 interrogatory answer stating that the priority date for conception – for an animal patent – derives from so-called "plant work" at CSIRO in 1994 provides pivotal links between the inventorship issues in Australia and those in the U.S. Inventor Graham was employed at CSIRO in 1994. He was working with other scientists there at the time. Furthermore, the 1994 date is consistent with CSIRO's statement that the "principles" of the technology are the same in plants and animals.

* Prior to January 2005, Benitec did not give a single written interrogatory answer that mentioned CSIRO, let alone would have alerted Nucleonics to the issues surrounding CSIRO, conception dates and/or inventorship.

* To date, Benitec has still not produced the full Australian Opposition (6,500 pages worth, not 1,200) and in January 2005 Nucleonics had to obtain the documents itself and produce them to Benitec thereafter. (NUC 29831-36851).[6]

* New documents showing Graham's culpability were produced for the first time in January 2005.

Consider B15942 (cited in Nucleonics' Opening Brief at Exh. 4), wherein Graham notes his involvement with CSIRO and reveals his knowledge that "inclusion of all inventors is an absolute requirement for successful filing." That document was first produced in January 2005 and we know of no copy produced before then – and Benitec does not argue otherwise regarding that document. This document goes directly to Graham's knowledge and culpable state of mind.

---

[5] Benitec's Answering Brief at page 1 incorrectly states that the fact discovery cut-off was October 8, 2004.

[6] Benitec's brief at page 6 misrepresents these facts also. Nucleonics did not produce the Australian Opposition at NUC 6409-6564 – that is a PCT application, not an Australian Opposition. Nucleonics' production of the Opposition occurred very recently – when it became evident that we would have to seek out the document independently because Benitec had not produced it in its entirety.

We do concede, and apologize, that we were apparently mistaken in believing that certain materials cited in our exhibits were first produced in January 2005. This does not detract from the fact that much new evidence was produced for the first time in January 2005.

In short, many new facts and understandings have recently come to light.

### 3. Amendment Is Liberally Granted, Rule 16(b) Has Not Been Violated and Does Not Change the Rule 15 Standard

Because discovery is still open, and the Case Management Order allowed amendments through the close of discovery, this motion to amend is timely and Rule 16(b) should not apply at all.

Furthermore, Rule 15's liberal standard for granting amendments is not lightly set aside for technicalities where an important defense will be denied to a party. Indeed, courts have specifically noted that Rule 16(b) does not trump the liberal amendment rules in the absence of real prejudice. See, e.g., In re Lutheran Brotherhood Ins. Prods. Co., 2002 U.S. Dist. LEXIS 20163 at *15 (D. Minn. Oct. 7, 2002) ("Although case management orders are an important tool . . . 'mindless subservience to the dictates' of such an order should not overshadow the Court's fundamental obligation to achieve a just adjudication of a civil claim . . . ").

In Enzo Life Sciences, Inc. v. Digene Corp., 270 F. Supp.2d 484 (D. Del. 2003), this Court permitted amendment to add charges of inequitable conduct six months after the passing of the deadline for amendments and fact discovery and over the same type of objections raised by Benitec based on Rule 16(b) and supposed futility. In fact, it was Benitec's current counsel that obtained the amendment. The Court stated:

> "Ordinarily motions for leave to amend pleadings are properly considered under Rule 15(a), which provides that a party may amend its pleadings 'by leave of the court . . . and leave shall be freely given when justice so requires' . . . the Supreme Court of the United States has cautioned that leave should be freely granted unless there is an apparent reason for denying a request . . . . Enzo

> contends that the 'good cause' standard of Rule 16(b) is implicated in this case because a Scheduling Order, with a deadline to amend pleadings by July 26, 2002, is in effect and that Schedule should not be 'modified except upon a showing of good cause.' Fed.R.Civ.P. 16(b)...
>
> The Court concludes that Digene has met the standard under Rule 15(a) . . .
>
> With regard to the 'good cause' requirement of Rule 16(b), the Court concludes that Digene has demonstrated 'good cause' . . . (T)he Scheduling Order has been modified several times to serve the interests of the parties. . . . Further the Court concludes that Digene filed its amendment soon after it was able to satisfy the pleading requirements of Rule 9(b)."

Enzo Life Sciences, 270 F. Supp.2d at 487, 490.

In the present case, new facts and positions have just come to light or come into clear focus. And, as in Enzo, the Scheduling Order has been modified and discovery extended. This extension occurred at the request of both parties; and in light of Benitec's "gross misinterpret[ation]" or "ignoring" of the Order (as the Court states in its December 10th Memorandum Order - D.I. 74).

### C. Benitec Will Not Be Prejudiced By the Granting of this Amendment; Nucleonics Will Be Prejudiced By the Denial of this Amendment

Denial of this Amendment will prejudice Nucleonics by denying it a key defense. By contrast, with no depositions yet taken (and Benitec resisting depositions for the past few months), Benitec will not face re-deposition of witnesses that might have been previously deposed. Furthermore, the witnesses to be deposed regarding inventorship and inequitable conduct should be the same as those generally sought (e.g., inventor Michael Graham). Undue delay, for Rule 15 purposes, means prejudicial delay. The Procter & Gamble Co. v. Nabisco Brands, Inc., 125 F.R.D. 405, 409 (D. Del. 1987). Benitec has not demonstrated any true prejudice that would result from these amendments.

## III. Conclusion

For the reasons stated above and in Nucleonics' Opening Memorandum, we respectfully urge that Nucleonics be granted leave to amend its Answer to include defenses and counterclaims of inequitable conduct and wrongful inventorship.

Respectfully submitted,

Dated: March 10, 2005

/s/Paul E. Crawford
Paul E. Crawford, Esq. (#0493)
CONNOLLY, BOVE, LODGE
  & HUTZ
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 658-9141

Dennis J. Mondolino
Jason A. Lief
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

Attorneys for Nucleonics Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of March, 2005, I electronically filed the REDACTED VERSION OF D.I. 98 with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

> John W. Shaw, Esq.
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19899

I hereby certify that on the 17th day of March, 2005, I have Federal Expressed the document to the following non-registered participants:

> Marc Labgold
> Patton Boggs
> 8484 Westpark Drive
> Ninth Floor
> McLean, VA 22102

> /s/Paul E. Crawford
> Paul E. Crawford, Esq. (#0493)
> CONNOLLY, BOVE, LODGE
>   & HUTZ
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, Delaware 19899
> pcrawford@cblh.com

385708