IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENITEC AUSTRALIA LTD.,

      Plaintiff,

   v.

NUCLEONICS, INC., a Delaware corporation,

      Defendant.

Civil Action No. 04-174-JJF

**REDACTED VERSION OF DI 110**

**Defendant Nucleonics, Inc.'s Opposition
To Plaintiff Benitec's Motion to Dismiss
And
Renewed Request To Add
Declaratory Judgment Counterclaims of Invalidity
and Fraud-Unenforceability**

Dated: August 22, 2005

Paul E. Crawford, Esq. (#0493)
CONNOLLY, BOVE, LODGE
  & HUTZ
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 658-9141

*Of Counsel:*
Dennis J. Mondolino
Jason A. Lief
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000

*Attorneys for Nucleonics Inc.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ............................. 3

III.  SUMMARY OF THE ARGUMENT .................................................... 5

IV.   STATEMENT OF FACTS ................................................................... 6

    A.    The Technology ........................................................................ 6

    B.    Start-Up Biotech Nucleonics and Its Work in Gene Silencing ................. 7

    C.    Benitec's Patent-In-Suit And Benitec's Accusations of
        Infringement And Their Failure to Covenant Not To Sue ...................... 10

V.    ARGUMENT .................................................................................... 12

    A.    Benitec Has Brought This Patent Litigation; It Cannot Now Jump
        Ship "Without Prejudice" .......................................................... 14

    B.    Nucleonics Has Reasonable Apprehension of Suit; Jurisdiction
        Exists Over a Declaratory Judgment Action ................................... 16

        1.   Reasonable Apprehension:
            Benitec's Litigious Ways and Failure to Covenant ................. 17

        2.   Nucleonics' Activities:
            Activities Today and Concrete Preparations ......................... 18

    C.    Judicial Economy and The Public Interest Favor Resolving this
        Controversy Now – The Court Should Exercise its Discretion to
        Hear Nucleonics Counterclaims for a Declaration of Invalidity,
        Unenforceability and Non-Infringement ....................................... 20

VI.   CONCLUSION ................................................................................. 21

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Altvater v. Freeman*, 319 U.S. 359 (1943)..................................................................15

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731
(Fed. Cir. 1988)...............................................................................................2, 6, 13, 14

*Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83 (1993) ...................2, 13, 15

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005)........................2, 5, 13, 14, 15

*Glaxo, Inc. v. Novopharm Ltd.*, 110 F.3d 1562 (Fed. Cir. 1997)....................................14

*Lear v. Adkins*, 395 U.S. 653 (1969)........................................................................20

*Merck KGaA v. Integra Lifesciences I, Ltd.*, 125 S.Ct. 2372 (2005)..............................18

*Mobil Oil Corp.v. Advanced Environmental Recycling Techs. Inc.*, 826 F.Supp.
112 (D. Del. 1993) ........................................................................................13, 16, 19

*Shelcore v. Durham Industrial, Inc.*, 745 F.2d 621 (Fed. Cir. 1984).......................15, 16

*Sierra Applied Sciences Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361
(Fed. Cir. 2004)................................................................................................16, 17

*The Goodyear Tire & Rubber Co. v. Releasomer, Inc.*, 824 F.2d 953 (Fed. Cir.
1987) ................................................................................................................18

*United Sweetener USA, Inc. v. The Nutrasweet Co.*, 760 F.Supp. 400 (D. Del.
1991) ................................................................................................................19

### FEDERAL STATUTES

28 U.S.C. §2201.................................................................................................12

35 U.S.C. §271(e) .............................................................................................3, 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENITEC AUSTRALIA LTD.,

Plaintiff,

v.

NUCLEONICS, INC., a Delaware corporation,

Defendant.

Civil Action No. 04-174-JJF

FILED UNDER SEAL PURSUANT TO
PROTECTIVE ORDER

**Defendant Nucleonics, Inc.'s Opposition
To Plaintiff Benitec's Motion to Dismiss
And
Renewed Request To Add
Declaratory Judgment Counterclaims of Invalidity
and Fraud-Unenforceability**

## I.    **INTRODUCTION**

Defendant Nucleonics Inc. ("Nucleonics") opposes plaintiff Benitec's motion to
dismiss this lawsuit without prejudice.[1]  Benitec brought this lawsuit accusing Nucleonics
of infringement, and in so doing put its patent in play and brought a public cloud of
uncertainty over its competitor Nucleonics.  It did this knowing that its patent was
fraudulently obtained and also knowing (and publicly asserting) that the very act of
litigation would adversely affect investment in biotech start-up Nucleonics.  Evidence
recently taken in Australia confirms Benitec's fraud in obtaining the patent.

Benitec cannot now unilaterally choose to leave the playing field,

**Redacted**                                           and, from a distance, keep its

---

[1]    In addition to this Opposition, defendant Nucleonics may seek leave to file a Sur-
Reply given the bare-bones nature of Benitec's Opening Brief and the unknown
arguments to be made in Benitec's Reply.

patent in a "safe harbor" from invalidity scrutiny, while "without prejudice" still

continuing to threaten Nucleonics' current and future business and technology.

The Declaratory Judgment Act was designed to address this very scenario where:

> a patent owner engages in a *danse macabre*, brandishing a
> Damoclean threat with a sheathed sword . . . Before the Act,
> competitors victimized by that tactic were rendered helpless and
> immobile so long as the patent owner refused to grasp the nettle
> and sue. After the Act, those competitors were no longer restricted
> to an *in terrorem* choice between the incurrence of a growing
> potential liability for patent infringement and abandonment of their
> enterprises; they could clear the air by suing for a judgment that
> would settle the conflict of interests.

Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734-35 (Fed. Cir.

1988) (quoted with approval by the Supreme Court in Cardinal Chemical Co. v. Morton

Int'l, Inc., 508 U.S. 83, 95-96 (1993)). See also Fort James Corp. v. Solo Cup Co., 412

F.3d 1340, 1348 (Fed. Cir. 2005) ("a case or controversy adequate to support jurisdiction

of a declaratory judgment counterclaim necessarily exists if a party has actually been

charged with infringement of a patent").

Thus the Act permits the federal courts to adjudicate the chilling uncertainty

deriving from actual, and even reasonably apprehended, legal disputes. Here, an actual

lawsuit has been filed – we do not deal with mere apprehension. Here, there is no

covenant not to sue in the future or even in the present day (for activities not within the

Integra infringement safe-harbor). Here, plaintiff continues to assert that defendant

Nucleonics, as a scientific matter, infringes the patent-in-suit. Here, there is present day

and very real business damage to defendant Nucleonics.

The lifeblood of a biotech start-up is its ability to raise venture capital to fuel its

scientific work – and all of Nucleonics' work (human, animal, research-oriented or

commercial) is alleged to infringe Benitec's patent. Investors in biotech enterprises take

into consideration the intellectual property/patent landscape that faces the start-up company when making investment decisions. Where such investors and business partners apprehend patent roadblocks – as they do here – investment and ultimately the business is threatened. Benitec's current lawsuit, their aggressive litigation behavior generally, and their failure to covenant not to sue all require that Nucleonics' counterclaims for Declaratory Judgment be permitted into this case and pursued. Jurisdiction exists, a controversy exists and a Declaratory remedy is needed.

Defendant Nucleonics urges that Benitec's motion to dismiss be denied and that Nucleonics' Amended Answer with Declaratory counterclaims of patent invalidity and unenforceability be permitted to go forward.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Benitec brought this lawsuit for alleged patent infringement on March 22, 2004. Throughout the proceedings – and still to this day – Benitec has maintained its allegation that both the laboratory work currently being done by Nucleonics, as well as any therapies or products derived therefrom infringe the Benitec patent-in-suit as a matter of scientific technology. These assertions of infringement have never been limited by Benitec to any particular experiment or therapeutic indication. Indeed, Benitec has paraded its patent-in-suit to the world as a broad patent covering countless applications of gene-silencing in humans and animals[2] – animal uses are not shielded by the infringement "safe harbor" of 35 U.S.C. §271(e)(1)[3] or the Supreme Court's Integra decision.

---

[2]    See Exh. 1 Benitec Press Release. See also the quotes on pages 11-12, 17 below from Benitec's statements in this litigation.

[3]    It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention (**other than a**

3

To date, and despite its motion to withdraw, Benitec has <u>never</u> conceded that

Nucleonics' work does not infringe the patent-in-suit as scientifically interpreted by

Benitec. Indeed, Benitec's current motion to withdraw "without prejudice" indicates

Benitec's continuing claim of infringement and plan to renew litigation.

* * * * *

Procedurally, Nucleonics has a pending motion to Amend its Answer to add

Declaratory Judgment counterclaims of patent invalidity, unenforceability and non-

infringement. (D.I. 91). That motion was filed on February 16, 2005 (months prior to

Benitec's motion to dismiss) and remains to be ruled on.

The case has proceeded through discovery in halting fits necessitating several

motions to compel by defendant Nucleonics that are yet to be ruled on.

However, one aspect of discovery – Nucleonics' First Hague Convention Letter of

Request – has proceeded over Benitec's objections. During the weeks of May 30th and

June 6th, 2005, counsel for Nucleonics took the testimony in Australia of scientists from

non-party CSIRO who confirmed their inventive contributions to the Benitec patent-in-

suit and expressed their dismay at their former colleague, named-inventor Dr. Graham,

for his failure to name them as co-inventors. Benitec failed to identify these CSIRO

scientists on its U.S. Patent Application although Benitec knew of the inventorship

dispute at the time. Indeed, Benitec <u>never</u> disclosed the existence of the inventorship

---

**new animal drug or veterinary biological product** (as those terms are used in
the Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913) **which
is primarily manufactured using recombinant DNA, recombinant RNA,**
hybridoma technology, or other processes involving site specific genetic
manipulation techniques) solely for uses reasonably related to the development
and submission of information under a Federal law which regulates the
manufacture, use, or sale of drugs or veterinary biological products.

4

dispute in Australia to the U.S. Patent Office. This knowing failure to identify the correct inventors or the inventorship dispute forms the basis of Nucleonics allegation of inequitable conduct and unenforceability.

Shortly after the Australian Hague proceedings counsel for Benitec inquired of Nucleonics about dropping the case, ostensibly in light of the Supreme Court's June 13, 2005 Integra decision. A discussion between counsel took place during July 2005, wherein Nucleonics' counsel conveyed that absent a settlement providing a true resolution it intended to proceed and invalidate the patent-in-suit. Neither Benitec nor its counsel made any settlement overtures after that discussion.

Benitec's motion to voluntarily dismiss the case followed on August 1, 2005.

III.   **SUMMARY OF THE ARGUMENT**

The Declaratory Judgment Act serves to prevent patentees from maintaining an allegation of patent infringement over an accused infringer, while shielding their patent from scrutiny in the courts as to validity and enforceability.

Jurisdiction – a justiciable case or controversy – in the context of a Declaratory Judgment action exists where:

(1) a patentee has already sued on the patent and does not covenant not to sue for all past, present and future acts of alleged infringement. See Fort James Corp. v. Solo Cup. Co., 412 F.3d 1340, 1348 (Fed. Cir. 2005) and the authority cited at pages 14-16, infra.

or:

(2) where the accused infringer reasonably apprehends suit, because the patentee has threatened suit or displayed other litigious behavior and the accused infringer is

5

currently engaging in an allegedly infringing activity or making concrete preparations to do so. Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988).

Under either standard, jurisdiction exists here. Benitec has sued Nucleonics and seeks to now withdraw "without prejudice" – refusing to provide a covenant not to sue. Nucleonics' reasonably apprehends suit because Benitec continues to assert that Nucleonics' activities (even those taking place in the laboratory, without an actual product) infringe its patent as a matter of science; and the so-called Integra safe-harbor does not apply                 **Redacted**                         and ultimately provides only a temporary reprieve that will conclude with a lawsuit as to human applications of Nucleonics' technology.

Defendant Nucleonics' business and research are being significantly hurt in the present day by Benitec's ability to claim that infringement exists, while avoiding a validity and inequitable conduct challenge. Nucleonics has jurisdiction to pursue a Declaratory Judgment action and prays for relief from this Court.

## IV.    STATEMENT OF FACTS

### A.    The Technology

This patent infringement case involves technology that "silences" the expression of particular target genes within cells. Genes are made up of large molecules called DNA (deoxyribonucleic acid). The DNA from a particular gene provides the blueprint for the cell to construct a particular protein. This is known as gene expression. Because certain genes cause or contribute to illness when expressed (e.g., cancer oncogenes or viral genes), it is possible to treat or alleviate these diseases by silencing the expression of the

disease-causing genes. The technology at issue in this case relates to such "gene silencing".

In particular, the "gene silencing" technology at issue involves transfecting a cell (exposing the cell) to a piece of foreign DNA that is specifically engineered to contain portions or copies of the target gene to be silenced. The foreign DNA then produces other molecules (double-stranded RNA) that in turn shut down the expression of the target gene. This technology is referred to as RNAi (or RNA interference) gene silencing.

Simply put, by introducing a very specific DNA into a cell, one can stop the expression of a particular gene already in the cell – while other genes are left untouched. This technology can be used to treat disease or alter genetic expression of cells – including use as a treatment for viral infections in <u>animals</u> <u>and</u> <u>humans</u> (where a specific viral gene can be silenced thereby stopping the viral life cycle). The technology can also be used to study the role that certain genes play in cells by comparing cells that have had the gene silenced with cells that have a functioning version of the gene.

**B.    Start-Up Biotech Nucleonics**
    **and Its Work in Gene Silencing**

Nucleonics, Inc. is a privately-held biotech start-up company, engaged in research related to gene silencing and is, <u>inter alia</u>, pursuing treatments for hepatitis B and other human and, soon, animal maladies.

Nucleonics was formed as a business entity in January 2001 by founders C. Satishchandran and Catherine Pachuk. (Exh. 2, Towarnicki Decl ¶ 10).[4]   The company is located in offices and laboratories in Horsham Pennsylvania    **Redacted**

---

[4]    The Declaration of Robert J. Towarnicki (President and CEO of Nucleonics) is attached as Exhibit 2.

7

**Redacted**                                      That corporate purpose is

the use of RNAi to silence genes in various applications. (Exh. 2, Towarnicki Decl. ¶

10).

        All of Nucleonics' work is based upon the use of genetic DNA constructs that are

introduced into a cell of interest and are designed to silence the genetic expression of

particular genes.  Although the targeted gene of interest may change for different

projects, and the particular portions of DNA used in the construct may change, the basic

approach to gene silencing is the same for all of Nucleonics' work – including work

related to human illnesses

                (Exh. 2, Towarnicki Decl. ¶ 10 and 20).

        In general terms, Nucleonics uses RNAi techniques to achieve gene-silencing.  As

Nucleonics' reputation and business have grown, new applications and opportunities for

its technology have arisen.                **Redacted**

                (Exh. 2, Towarnicki Decl. ¶ 20).  But, whatever the

application, the fundamental approach is the same.  As discussed below, plaintiff Benitec

has asserted that that basic approach – Nucleonics' use of RNAi – constitutes

infringement of the '099 patent-in-suit.

8

# Redacted

Nucleonics, like other startup biotech companies, is also involved in negotiations to partner with larger companies and thereby obtain additional funding for various RNAi projects. However, these negotiations have been hampered by the spectre of this litigation and the patent-in-suit, and have not borne fruit. (Exh. 2, Towarnicki Decl. ¶ 13-16).

Biotech investors look at potential patent roadblocks when determining whether to invest in a startup company. Even the threat of a patent lawsuit – however unjustified – can chill investment. (Exh. 2, Towarnicki Decl. ¶ 14-20). This is particularly true where the core technology and focus of a start-up is challenged with threats of patent infringement. In the present instance, Benitec claims – however incorrectly – that it has dominant patent rights over countless embodiments of RNAi;[5] and Nucleonics' entire research is RNAi-based. The result is a real-world chill on investment.

---

[5]     Benitec has publicly stated:

"Benitec's patent estate represents a dominant position in DNA-directed gene silencing, and potentially the dominant position in RNAi application for humans and mammals." (See Benitec's Annual Report for the Year Ended 30 June 2003, Exh. 3).

9

C.    **Benitec's Patent-In-Suit And
        Benitec's Accusations of Infringement
        And Their Failure to Covenant Not To Sue**

Benitec has asserted United States Patent No. 6,573,099 entitled "Genetic

Constructs for Delaying or Repressing the Expression of A Target Gene" against

defendant Nucleonics – as well as against others (Ambion and Genscript) who have since

settled their dispute with Benitec.  The claims of the '099 patent cover both "genetic

constructs" that are capable of gene silencing and "methods" of gene silencing.

Thus, claim 1 recites:

> 1.  An isolated genetic construct which is capable of
> delaying, repressing or otherwise reducing the expression
> of a target gene in an animal cell which is transfected with
> said genetic construct, wherein said genetic construct
> comprises at least two copies of a structural gene sequence,
> wherein said structural gene sequence comprises a
> nucleotide sequence which is substantially identical to at
> least a region of said target gene, and wherein said at least
> two copies of said structural gene sequence are placed
> operably under the control of a single promoter sequence
> which is operable in said cell, wherein at least one copy of
> said structural gene sequence is placed operably in the
> sense orientation under the control of said promoter
> sequence.

Claim 7 recites:

> 7.  A method of delaying or repressing the expression of a
> target gene in an animal cell, comprising transfecting said
> animal cell with a genetic construct, wherein said genetic
> construct comprises at least two copies of a structural gene
> sequence, wherein said structural gene sequence comprises
> a nucleotide sequence which is substantially identical to at
> least a region of said target gene, and wherein said at least
> two copies of said structural gene sequence are placed
> operably under the control of a single promoter sequence
> which is operable in said cell, wherein at least one copy of
> said structural gene sequence is placed operably in the
> sense orientation under the control of said promoter
> sequence.

10

Benitec claims that its patent broadly covers numerous, if not countless, techniques of gene silencing of <u>any gene</u> in <u>any cell type</u> in <u>any animal</u> of <u>any species</u> by <u>any mechanism</u>. (See Exh. 4, Benitec's January 28, 2005 Response to Interrogatory No. 2 regarding Claim Construction, Exhibit A at 1 and throughout).

During the course of this litigation to date, Benitec has broadly accused <u>all</u> Nucleonics' activities of infringement (including <u>current</u> <u>laboratory</u> <u>work</u> in animal or human cells, as well as, all future commercial applications). Benitec has specifically accused Nucleonics of infringing the patent-in-suit through animal laboratory work. For instance, consider Benitec's prior statement to this Court:

## Redacted

(Exh. 5, from D.I. 34 at 5). <u>See</u> <u>also</u> <u>Id</u>. at 6

Benitec's accusations of infringement extend beyond their statements in documents and pleadings in this litigation. Indeed Benitec has used the press and public statements about this litigation to sully Nucleonics' reputation and hinder its business. Benitec has publicly stated that it purposely brought the present lawsuit on the eve of Nucleonics' March 2004 funding. (Exh. 2, Towarnicki Decl. ¶ 18).

> **Benitec commenced proceedings against Nucleonics, Inc. in March 2004 as they were obviously infringing** on Benitec's issued patent estate, of which Nucleonics was aware. **Benitec was advised that Nucleonics was in the process of raising in excess of U.S. $40 million from U.S. investors** using Benitec's ddRNAi technology, which was the subject of an issued patent in the United States dated June 2003. **Benitec thought it necessary and important to bring to the attention of the prospective investors in Nucleonics the existence of Benitec's issued patents** and to ensure that Benitec could not be criticized at a later date of having known

11

of infringement, but of having taken no action to protect Benitec's intellectual property, or the interests of Nucleonics' own investors.

(Exh. 1, Benitec Press Release of December 2, 2004 regarding this litigation).

These pronouncements from Benitec make clear its views that: (1) the entirety of Nucleonics' "exclusive" activities are alleged to fall within the technological scope of Benitec's patent claims; (2) Nucleonics' present or planned work (including laboratory or commercial work) on                         or any other work not within Integra's temporary non-infringement safe-harbor will provoke Benitec's litigious patent behavior; and (3) any and all future human treatments developed by Nucleonics (all using the same fundamental RNAi techniques that Benitec broadly claims are covered by its patent – "any means" "any gene") will necessarily constitute infringement in Benitec's view.

That is not speculation, it is certainty – regardless of what human                **Redacted** disease or what gene segment Nucleonics is pursuing or chooses to pursue.

We note that Benitec has offered no covenant not to sue for past, present or future activities, despite its clear belief that the basic underlying RNAi technology that Nucleonics uses today (and bases its future upon) constitutes an infringement of the Benitec patent. Notwithstanding all of the above, in conclusory fashion, Benitec simply asserts that there is no case or controversy. That is not the case.

V.    **ARGUMENT**

Litigation, and even the threat of litigation, creates uncertainty in the business community. In industries like bio-technology, litigation – and particularly patent litigation – can be lethal to the ability to progress a start-up company. It is for these reasons that the Declaratory Judgment Act, 28 U.S.C. §2201, was enacted.

The Declaratory Judgment Act permits resolution of a dispute where an actual

litigation has been brought and also where the patentee has not sued (or is attempting to

half-heartedly walk away from a suit "without prejudice" to suing again) but is

"brandishing a Damoclean Threat with a sheathed sword"[6] – the threat being a patent not

brought into the light of judicial scrutiny, but nonetheless used to publicly stimy the

accused infringer's business.  The present situation, where plaintiff Benitec has sued and

will sue again and wants Nucleonics' investors to be "informed" about that, presents the

classic situation for a Declaratory remedy.  As the Supreme Court has said:

> Merely the desire to avoid the threat of a "scarecrow" patent, in
> Learned Hand's phrase, may therefore be sufficient to establish
> jurisdiction under the Declaratory Judgment Act.  **If**, in addition to
> that desire, **a party has actually been charged with infringement**
> **of the patent, there is, necessarily, a case or controversy**
> **adequate to support jurisdiction of** a complaint, or a
> **counterclaim, under the Act.**

Cardinal Chemical Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993) (emphasis added).

See also Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1348 (Fed. Cir. 2005).

The Declaratory Judgment Act applies to instances of current-day alleged

infringement and also to future acts of infringement that may be alleged.  See, e.g.,

Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988)

("engaged in an actual making, selling or using activity subject to an infringement charge

or must have made meaningful preparation for such activity") (emphasis added); Mobil

Oil Corp.v. Advanced Envt'l Recycling Techs. Inc., 826 F. Supp. 112, 114 (D. Del. 1993)

(Farnan, D.J.) (finding a case or controversy where "Mobil still faces a threat of future

patent infringement . . . if it produces and markets composite lumber products"); cf.

---

[6]    See quote from the Supreme Court and Federal Circuit on page 2, supra.

13

Glaxo, Inc. v. Novopharm Ltd., 110 F.3d 1562, 1571 (Fed. Cir. 1997) (patentee can sue for declaration of future infringement).

The determination of the presence of a case or controversy in support of Declaratory judgment jurisdiction is determined on a case-by-case factual basis. Arrowhead Industrial Water, Inc., 846 F.2d at 736.

However, as a matter of law, where the patentee has brought the lawsuit and does not covenant not to sue for past, present and future acts, jurisdiction over the Declaratory judgment counterclaim exists. Fort James Corp., 412 F.3d at 1348. See also Section V.A. below at page 14-16, infra, for an in-depth discussion and additional cases, including Supreme Court authority.

In cases – unlike this one – where no infringement action has been instituted by the patentee and the putative infringer seeks a Declaratory Judgment as plaintiff, a different standard – "reasonable apprehension" – applies. This standard looks to (1) the patentee's litigation behavior and (2) the putative infringer's acts of supposed infringement or preparations therefore. Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731,736 (Fed. Cir. 1988).

Under either standard, there is jurisdiction over this Declaratory Judgment counterclaim. Each of these bases for jurisdiction is discussed below in greater detail.

A.     **Benitec Has Brought This Patent Litigation;**
       **It Cannot Now Jump Ship "Without Prejudice"**

In its most recent pronouncement regarding Declaratory Judgment jurisdiction in the patent context, the Federal Circuit explained that once a patentee sues, jurisdiction over the Declaratory judgment counterclaim remains unless a complete covenant not to sue is given:

14

>As the Supreme Court has explained, a case or controversy
>adequate to support jurisdiction of a declaratory judgment
>counterclaim necessarily exists if a party has actually been
>charged with infringement of a patent. Cardinal Chem. Co.
>v. Morton Int'l, Inc. 508 U.S. 83, 95, 113 S. Ct. 1967
>(1993). Furthermore, a counterclaim questioning the
>validity or enforceability of a patent raises issues beyond
>the initial claim for infringement that are not disposed of by
>a decision of non-infringement. Id. at 96.

Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1348 (Fed. Cir. 2005). The Fort James

court went on to note:

>a patentee defending against an action for a declaratory
>judgment of invalidity can divest the trial court of
>jurisdiction over the case by filing a covenant not to assert
>the patent at issue against the putative infringer with
>respect to any of its past, present, or future acts.

Id.

The Fort James holding is confirmed by numerous prior cases. See, e.g., Cardinal

Chemical Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993):

>If ... a party has actually been charged with infringement of
>the patent, there is, *necessarily*, a case or controversy
>adequate to support jurisdiction of a ... counterclaim, under
>the [Declaratory Judgment] Act ... A party seeking a
>declaratory judgment of invalidity presents a claim
>independent of the patentee's charge of infringement
>(italics in original).

See also Altvater v. Freeman, 319 U.S. 359, 363-64 (1943):

>though the decision of non-infringement disposes of the bill and
>answer, it does not dispose of the counterclaim which raises the
>question of validity ... since their dispute went beyond the single
>claim and the particular accused devices involved in the suit.

To similar effect, see Shelcore v. Durham Indus., Inc., 745 F.2d 621, 624 (Fed. Cir. 1984)

stating:

>By voluntarily dismissing with prejudice claim 13 of the
>'831 utility patent, Shelcore removed the issue of
>infringement of claim 13 from the trial court's
>consideration. But Shelcore could not unilaterally remove

15

the validity issue because Durham's counterclaim put
validity of all the claims in issue.

The present case is directly on point with <u>Fort James</u> and the other cases cited

above.  Benitec has brought this lawsuit as patentee.  It has caused a cloud of uncertainty

to surround Nucleonics' business activities.  It has <u>not</u> covenanted not to sue for past,

present and future activities.  Instead, as in <u>Fort James</u>, Benitec is attempting to walk

away from the challenge to the validity and enforceability of its patent only <u>after</u> an

intervening and apparently adverse decision on infringement from the Supreme Court in

<u>Integra</u>.[7]  Under the controlling authority of <u>Fort James</u>, Benitec cannot unilaterally do

this – unless it covenants not to sue as to all past, present and future acts and thus

provides true certainty.  <u>Cf.</u> <u>Mobil Oil Corp.v. Advanced Envt'l Recycling Techs. Inc.</u>,

826 F. Supp. 112, 114 (D. Del. 1993) (Farnan, D.J.) (finding a case or controversy where

"Mobil still faces a threat of future patent infringement . . . if it produces and markets

composite lumber products").  Benitec seeks dismissal "without prejudice" – that is not a

covenant not to sue.  Indeed, it is a blatant expression of the intention to sue again.

Jurisdiction remains.

**B.    Nucleonics Has Reasonable Apprehension of Suit;
        Jurisdiction Exists Over a Declaratory Judgment Action**

<u>Fort James</u> should end the inquiry and, in our view, requires a finding that

Declaratory Judgment jurisdiction exists.  However, for completeness, we address the

alternative standard that applies to cases where the putative infringer – not the patentee –

has initiated litigation for a Declaratory Judgment.[8]

---

[7]    In <u>Fort James</u>, the patentee had offered a covenant only after a finding of non-
infringement.  <u>Id.</u> at 1348.

[8]    The <u>Fort James</u> holding that once a patentee sues there is "<u>necessarily</u>"
jurisdiction over a Declaratory Judgment counterclaim is on point for our

1.    **Reasonable Apprehension:**
      **Benitec's Litigious Ways and Failure to Covenant**

Nucleonics reasonably apprehends suit because:

(1) it has been sued;

(2) because patentee Benitec has also sued others and expressed a desire to vigorously enforce its patents;[9]

(3) because patentee Benitec has stated that the technology Nucleonics uses currently and will continue to use is covered by Benitec's patent;

(4) because Benitec has not covenanted not to sue; and

(5) because Benitec has requested a voluntary dismissal "without prejudice".

---

situation and shows the existence of a case and controversy here. Unlike Fort James, the one case cited by Benitec, Sierra Applied Sciences Inc. v. Advanced Energy Industries, Inc., 363 F.3d 1361 (Fed. Cir. 2004), involves a situation, where the patentee did not initiate the suit. Nonetheless, the Sierra case supports jurisdiction here.

The Sierra Court did find a case or controversy for the "2 kW product" where the patentees' promise not to sue only extended to "in-house use" but not manufacture or sale. Sierra, 363 F.3d at 1375-77. This partial promise created a situation reminiscent of that created by Integra in the current case – a partial non-infringement argument. Furthermore, there is no promise of any type in the current case – a factor favoring even greater apprehension.

For the Coleman 150 kW product, the Sierra Court remanded for a determination of whether the product actually performed the patented process. Sierra, 363 F.3d at 1380. Here, we know that whatever Nucleonics does, Benitec believes it to be infringement as a scientific matter.

Finally, the Sierra Court found no case or controversy for the Billings 150 kW product, where there was no final product being sold and no final design settled on. Because Nucleonics' fundamental technology (its "final design") is settled on, whatever disease it may be applied to, and is alleged to infringe by Benitec, even for pre-sale activity that is not within the Integra safe harbor, Nucleonics does have reasonable apprehension and there is a case or controversy.

[9] See Exh. 1, Benitec Press Release, stating "Benitec's strategy is to protect its proprietary intellectual property ... Benitec has initiated three infringement actions against companies using Benitec's technology without a license.   ". And also pages 3, 11-12, supra.

17

It is a classic indicia of "reasonable apprehension" that the patentee has sued previously on the same patent or related technology. The Goodyear Tire & Rubber Co. v. Releasomer, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987) ("though the patents had not issued when [the first litigation] was begun, that proceeding involves trade secret misappropriation of the same technology covered [by the patents]" and hence a case or controversy was found).

In the current situation, Benitec has sued Nucleonics based upon technology that forms the core of Nucleonics current and on-going work. Current and future research or products will all have the common technological features that Benitec believes infringe. Nucleonics can reasonably apprehend – even predict – that this plaintiff will reappear.

### 2. Nucleonics' Activities: Activities Today and Concrete Preparations

The Integra case does not permanently shield Nucleonics' hepatitis work from ultimate charges of infringement. Once a successful therapy is achieved it will be subject to infringement attack. Furthermore, because the Integra case is still to be fully characterized and because it does not state unequivocally that all pre-filing research is per-se immune from suit,[10] it remains unclear what subsequent case law will permit Benitec to pursue as an act of infringement regarding even past activities – and Benitec has not provided a covenant even as to those activities.

---

[10]    "[T]he use of patented compounds in preclinical studies is protected under 271(e)(1) as long as there is a reasonable basis for believing that the experiment will produce the types of information that are relevant to a [drug application]" Merck KGaA v. Integra Lifesciences I, Ltd., 125 S. Ct. 2372, 2383 - 84 (2005).

18

# Redacted

And Benitec is clearly on record that infringement begins in the lab (so long as Integra does not apply) – one need not wait for a product.

Again, we note that Benitec has never relinquished – to this day – its position that Nucleonics' activities infringe as a matter of science. Thus, in the absence of a complete covenant not to sue – and we have no covenant at all – we have the continuing threat of litigation – regarding '

and (2) activities that will ultimately leave the temporary safe harbor set out by Integra.

In United Sweetener USA, Inc. v. The Nutrasweet Co., 760 F. Supp. 400, 407 (D. Del. 1991), this court found Declaratory jurisdiction, stating:

> We believe that apprehension that is reasonable when a complaint is filed remains reasonable unless and until the threat of an infringement action is rendered all but nonexistent by later events. . . . a temporary suspension of the threat [is insufficient] . . . Rather than extinguishing the threat to plaintiffs, Nutrasweet's promise merely suspends it. Because the promise not to sue is of dubious enforceability, Nutrasweet is 'free to return to its old ways' and sue whenever it wishes.

(emphasis added). See also Mobil Oil Corp v.Advanced Environmental Recycling Techs, Inc., 826 F. Supp. 112, 114 (D. Del. 1993) (Farnan, D.J.) (finding a case or controversy where "Mobil still faces a threat of future patent infringement . . . if it produces and markets composite lumber products").

As in United Sweetener, Benitec's request for a dismissal "without prejudice" and without any covenant not to sue, merely suspends or postpones temporarily the issue. Nucleonics reasonably apprehends the continuation of litigation regarding projects outside the Integra safe harbor – including projects that are to begin in the near future.

19

The entire effort of Nucleonics – its physical plant, its laboratories, the current

· is all devoted to the RNAi area of technology (and will remain in that area)

that Benitec claims to own the patent rights to.  Integra does not change that – it merely

postpones it.

## Redacted

Thus, Nucleonics is preparing, with concrete steps that constitute its fundamental

business plan, to do work that Benitec says infringes.  And Benitec has already sued

Nucleonics and others.

Nucleonics has a reasonable apprehension of suit and jurisdiction exists to hear

the counterclaim for a Declaration of invalidity and unenforceability.

**C.    Judicial Economy and The Public Interest Favor
Resolving this Controversy Now –
The Court Should Exercise its Discretion
to Hear Nucleonics Counterclaims for a
Declaration of Invalidity, Unenforceability and Non-Infringement**

A case or controversy exists.  The Court should exercise its discretion to hear this

case for any and all of the following reasons:

(1)    Defendant Nucleonics, and its potentially life-saving therapies, stand to

suffer significant detriment if this controversy is not resolved;

(2)    Public policy favors challenges to invalid/unenforceable patent.  Lear v.

Adkins, 395 U.S. 653 (1969);

(3)    Judicial economy will be served by resolution of this issue now.  Benitec

does not covenant not to sue again and specifically seeks dismissal "without prejudice" to

sue again.  Furthermore, any additional counterclaims – like tortiuous interference –

should be resolved now.  If this case is dismissed, it will only return and discovery will need to be duplicated and a new court re-acquainted with the case;

(4) Discovery efforts – including significant testimony from the Hague Convention proceedings in Australia – risk being lost over time, witnesses will become unavailable or lose recollection over time and other discovery will be lost or require duplication if this case is postponed.

## I.    **CONCLUSION**

For the foregoing reasons, defendant Nucleonics urges that this Court deny plaintiff Benitec's motion to dismiss without prejudice.  A case or controversy exists and a Declaration of the invalidity, unenforceability and non-infringement of Benitec's patent is sought – and Justice requires that Nucleonics not be left at the mercy of Benitec's public brandishing of its patent, while it keeps its patent from exposure to true judicial scrutiny.

Dated: August 22, 2005

      **/s/ Paul E. Crawford**
Paul E. Crawford, Esq. (#0493)
CONNOLLY, BOVE, LODGE
  & HUTZ
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware  19899
      Telephone: (302) 658-9141

Dennis J. Mondolino
Jason A. Lief
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York   10178
Telephone: (212) 309-6000

*Attorneys for Nucleonics Inc*

## CERTIFICATE OF SERVICE

I, Paul E. Crawford, hereby certify on this 22nd day of August, 2005  I electronically filed the foregoing **Redacted Version of Defendant Nucleonics, Inc.'s Opposition To Plaintiff Benitec's Motion to Dismiss And Renewed Request To Amend To Add Declaratory Judgment Counterclaims of Invalidity and Fraud-Unenforceability** with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

> John W. Shaw, Esq.
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE  19899

I hereby certify that on this 22nd day of August, 2005, I have forwarded by Federal Express, the document to the following non-registered participants:

> Marc Labgold
> Patton Boggs
> 8484 Westpark Drive
> Ninth Floor
> McLean, VA  22102

> __/s/ Paul E. Crawford__
> Paul E. Crawford (# 0493)
> CONNOLLY, BOVE, LODGE & HUTZ
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, Delaware  19899
> pcrawford@cblh.com