# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BENITEC AUSTRALIA LTD., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 04-174-JJF |
| NUCLEONICS, INC., a Delaware corporation, | : |
| Defendant. | : |

### DECLARATION OF ROBERT J. TOWARNICKI

I, Robert J. Towarnicki, hereby declare the following:

1. I joined Nucleonics, Inc. as President & CEO in July, 2003.

2. Prior to joining Nucleonics, I served as Chairman, President and CEO of Cell Pathways, Inc., an emerging pharmaceutical company with two drugs in the clinic and one in-licensed commercial product. Cell Pathways was acquired by OSI Pharmaceuticals in June 2003 for more than $80 million in stock. During my six-year tenure at Cell Pathways, I led the expansion of the Company from a virtual organization to a fully integrated, NASDAQ listed, emerging pharmaceutical company.

3. Prior to joining Cell Pathways, I led the development of Integra LifeSciences Corporation as President and COO, again building a Company from a small virtual organization into a full-fledged medical device company trading on the NASDAQ during my five years of employment.

4. My experience prior to Integra LifeSciences includes: General Manager of Focus Technologies, a privately held esoteric disease reference laboratory; VP of Development and

Operations for Collagen Corporation; Plant Manager for Pfizer Pharmaceuticals and ten years of increasing management responsibility in operations for Merck & Co.

5.  I earned a BS and MS in Biology form Villanova University in 1973 and 1974 respectively and continued my education at Temple University Pharmacy School studying pharmaceutical chemistry.

6.  During my career in the biotech industry, I have raised over $250 million for the companies I have led through private venture financings, and for listed companies through follow-on offerings and Private Investment in Public Entities ("PIPE's"). I have taken two companies public through reverse mergers, in both instances acquiring management control of NASDAQ listed corporations.

7.  During my tenure at Integra LifeSciences and Cell Pathways I have led negotiations and concluded deals regarding:

    * acquisitions of companies and products;
    * product development and marketing;
    *

# Redacted

8.  The companies I have managed and worked with have all been involved in intellectual property rights through internal development, in-licensing and where appropriate, out-licensing of IP. I have negotiated both in-licensing and out-licensing transactions and have been involved in the initiation of litigation (Integra/Merck).

9. My experiences provide the knowledge and understanding of the impact of actual and potential litigation with regard to IP and freedom to operate on a company's ability to raise funds, partner, accomplish an Initial Public Offering ("IPO"), or execute a merger or sale of the Company.

10. Nucleonics' sole technical focus is RNA interference (the founding scientists, C. Satishchandran, Ph.D. and Catherine Pachuk, Ph.D., incorporated Nucleonics, Inc. on January 2, 2001 for the purpose of applying, developing and commercializing RNA interference to silence genes in a variety of applications).

11. Nucleonics is funded by venture capital.

## Redacted

12. The litigation initiated by Benitec, Ltd. has had an adverse impact on Nucleonics, Inc. This lawsuit calls into question Nucleonics' freedom to research, develop and sell products utilizing RNA interference technologies.

13.

14.

15.

**Redacted**

16.

17.  The suit and the threat of litigation in the future is interfering with Nucleonics' current ability to attract investment banking support for a public offering and makes the Company an undesirable candidate for merger or acquisition.

18.     The management of Benitec acknowledged they brought the present lawsuit on the eve of Nucleonics' March 2004 funding, knowing that investment was imminent.

19.

## Redacted

Biotech investors as well as corporate collaborators look at potential patent roadblocks when determining whether to invest in an emerging biotech company such as Nucleonics and will typically walk away from an investment if there are issues around IP.

20.

21. I believe it is necessary for Nucleonics to remove the cloud over its head resulting from the Benitec litigation, the potential of future litigation by Benitec and/or CSIRO, and the repeated press and public statements made by Benitec that sully Nucleonics' reputation and hinder its business. Failure to do so will adversely affect Nucleonics' ability to survive in the high risk world of biotechnology.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 15, 2005

*[signature]*
ROBERT J. TOWARNICKI