REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 1

REDACTED VERSION – PUBLICLY FILED



Contacts:
Robert Towarnicki
Nucleonics, Inc.
(267) 518-0101
rtowarnicki@nucleonicsinc.com

Joan Kureczka
Kureczka/Martin Associates
(415) 821-2413
Jkureczka@comcast.net

FOR IMMEDIATE RELEASE

## Nucleonics Challenges Validity of Benitec's U.S. Patent

HORSHAM, PA (October 4, 2004):  Nucleonics, Inc., a biotechnology company focused on the development of novel expressed RNA interference-based (eiRNA) therapeutics, announced that today it has filed with the United States Patent and Trademark Office (U.S. PTO) a Request for Re-examination of Benitec and the Australian Commonwealth Scientific and Industrial Research Organisation's (CSIRO) U.S. Patent Number 6,573,099, entitled "Genetic Constructs For Delaying Or Repressing The Expression Of A Target Gene."  The Request submits highly relevant prior art documents not previously considered by the U.S. PTO showing that the patent claims are invalid because they lack novelty and/or were obvious at the time the priority patent application was filed. Nucleonics also believes that the claims are ambiguous and that the application fails to provide adequate description or sufficient working examples to support the scope of the claimed subject matter.

This challenge follows Nucleonics' previously announced September 7 filing with The Commissioner of Patents in Australia of a Request for Re-Examination of Benitec and CSIRO's Australian Patent Number 743316, entitled "Control of Gene Expression."

"The filing of this Request for Re-examination in the U.S. PTO is yet another step in our on-going effort to use all available legal avenues to expose the inherent weaknesses in Benitec's patent portfolio," said Robert Towarnicki, Nucleonics' chief executive officer. "We will not allow Benitec to use its invalid patent claims to prevent those working to advance eiRNA technology from developing needed therapeutics for chronic viral diseases such as Hepatitis B, Hepatitis C and others, to help people around the world."

### About Expressed Interfering RNA (eiRNA)

Post-transcriptional gene silencing, also known as RNA interference or RNAi, is a phenomenon in which genes are silenced in a sequence-specific manner through targeted mRNA (messenger RNA) degradation.  Researchers believe RNAi may offer potential as a novel way to silence genes involved in disease, including genes encoded by viruses such as Hepatitis B, Hepatitis C and HIV, as well as genes involved in the establishment of inflammatory diseases and cancer.

-- More --

REDACTED VERSION – PUBLICLY FILED

Nucleonics Challenges Validity of Benitec's U.S. Patent
Page 2

Nucleonics is licensed under the RNAi technology of Andrew Fire, Craig Mello and their colleagues, widely recognized as the seminal work in this area. Nucleonics employs an expressed interfering RNA (eiRNA) approach whereby scientists insert plasmid DNA coding for relevant double-stranded RNA (dsRNA) into targeted cells, letting the cells produce and deliver specific dsRNA sequences. Cellular mechanisms then cleave the dsRNA into specifically encoded siRNAs (short interfering RNA), which silence the targeted genes. Nucleonics' researchers have shown the ability of long or short dsRNA strands produced in this way to stably silence genes, including Hepatitis B, Hepatitis C, and HIV, in relevant cell lines. Moreover, they have silenced multiple genes, as well as HBV replication, in adult mice without triggering an interferon response. Plasmid DNA approaches similar to those used by Nucleonics for expression of dsRNA have demonstrated human safety in over 500 patients to date, as part of research in the field of DNA-based vaccines. Nucleonics is initially directing its technology to the development of eiRNA therapeutics for Hepatitis B virus and Hepatitis C virus infections.

**About Nucleonics, Inc.**
Nucleonics, founded in January 2001, is an emerging biotechnology company focused on the development of novel RNA interference-based therapeutics for viral and other diseases. Privately owned Nucleonics is headquartered in Horsham, Pennsylvania.

####

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 2

REDACTED VERSION – PUBLICLY FILED

# REDACTED

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 3

REDACTED VERSION – PUBLICLY FILED

30 Fed. Appx. 994; 2002 U.S. App. LEXIS 13957

BIACORE AB and BIACORE, INC., Plaintiffs-Appellants, v. THERMO BIOANALYSIS CORPORATION, Defendant-Cross Appellant.

01-1337, 01-1446

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

30 Fed. Appx. 994; 2002 U.S. App. LEXIS 13957

March 15, 2002, Decided
March 15, 2002, Filed

**NOTICE:**
**PUB-STATUS:** [**1] RULES OF THE FEDERAL CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** ON APPEAL from the United States District Court for the District of Delaware In CASE NO(S). 97-CV-274.   Biacore v. Thermo Bioanalysis Corp., 79 F. Supp. 2d 422, 1999 U.S. Dist. LEXIS 20273 (D. Del. 1999).

**JUDGES:** NEWMAN, LINN, and DYK, Circuit Judges.

**OPINION: JUDGMENT**

This CAUSE having been heard and considered, it is ORDERED and ADJUDGED: AFFIRMED. See Fed. Cir. R. 36

Per Curiam.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 4

REDACTED VERSION – PUBLICLY FILED

2003 U.S. Dist. LEXIS 12073

RONALD W. BREITIGAN, Plaintiff, v. STATE OF DELAWARE, et al., Defendants.

C.A. No. 02-1333-GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 12073

July 16, 2003, Decided

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part Breitigan v. New Castle County, 2004 U.S. Dist. LEXIS 25177 (D. Del., Oct. 13, 2004)

**DISPOSITION-1:** [*1] Defendants' motions to dismiss were granted. Action was dismissed with prejudice.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant county police department and retirement trustees alleging that he was forced to retire at age 65 in violation of the Fair Labor Standards Act, 29 U.S.C.S. § 623 et seq., and the due process clauses of the Fifth and Fourteenth Amendments. He also named defendant state pension board because it was needed to effectuate his remedy. Defendants moved to dismiss.

**OVERVIEW:** Suit against the department and trustees needed to be dismissed for improper service. While Fed. R. Civ. P. 5 permitted certain papers to be filed with an attorney, proper service first needed to be effected under Fed. R. Civ. P. 4. The court further found that neither the department nor the trustees were suable entities. Neither was a separate entity for purposes of suit, but rather, were distinct departments or entities of the county government itself. Moreover, neither took any action to terminate the employee's job. As the department and trustees were non sui juris, they had to be dismissed from the action. As for the state board, no adversity of legal interest existed as between it and the employee. He had not applied for eligibility for retirement pension benefits from his past county employment, nor from his current state employment. Any adversity between the parties was purely hypothetical. There was no immediacy and reality of future harm. Any decision of the court would have amounted to no more than an advisory opinion. Finally, no useful purpose would have been served by entertaining a declaratory judgment action against the state board at that time.

**OUTCOME:** The court granted the police department's and retirement trustees' motion to dismiss and the state board's motion to dismiss. As for allegations against the county, the employee was allowed to amend within 15 days.

**CORE TERMS:** pension, entity, declaratory judgment, retirement, adversity, membership, motion to dismiss, present time, immediacy, retire, manages, declaratory judgment action, salary, advisory opinion, legal interest, corporate body, future harm, above-captioned, impermissibly, hypothetical, involvement, eligibility, refinement, ripeness, effected, suable, prong, retirement benefits, wrongful conduct, sui juris

**LexisNexis(TM) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

[HN1]The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Thus, in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. In particular, the court looks to whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer. However, the court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss. The court will only dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Civil Procedure > Joinder of Claims & Parties > Capacity of Parties*

[HN2]The question of a state entity's amenability to suit is governed by state law. Fed. R. Civ. P. 17(b).

*Civil Procedure > Joinder of Claims & Parties > Capacity of Parties*

[HN3]If a board or department is not a corporate body it cannot be sued as such, e.g., a police board, a board of workhouse directors, a board of park commissions, a housing authority, or a board of public works.

2003 U.S. Dist. LEXIS 12073

*Civil Procedure > Justiciability > Case or Controversy*

*Civil Procedure > Justiciability > Ripeness*

[HN4]U.S. Const. art. III, § 2, requires the existence of an actual case or controversy before a federal court may exercise jurisdiction over a matter. In order to determine the difference between a hypothetical question and an actual controversy in an action for declaratory judgment, the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The United States Court of Appeals for the Third Circuit has formulated the following three-part test to determine whether sufficient "ripeness" exists for the purposes of a declaratory judgment: (1) whether the parties' interests are adverse, (2) whether a judicial judgment would be conclusive as to rights; and (3) the practical help, or utility of that judgment.

*Civil Procedure > Justiciability > Ripeness*

[HN5]According to the United States Supreme Court in determining whether a prayer for a declaratory judgment is ripe, the lower courts must consider: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. The test formulated by the United States Court of Appeals for the Third Circuit is not a separate and distinct test from that described by the Supreme Court, but is merely a refinement of the test.

*Civil Procedure > Justiciability > Ripeness*

[HN6]To satisfy the adversity requirement of the ripeness test, a plaintiff must show either (1) present adversity of legal interests between the parties; or (2) immediacy and reality of future harm.

COUNSEL: For Ronald W Breitigan, PLAINTIFF: Frank E Noyes, II, White & Williams, Wilmington, DE USA.

Ronald W Breitigan, PLAINTIFF, Pro se, Wilmington, DE USA.

For State of Delaware, DEFENDANT: Michael F Foster, Department of Justice State of Delaware, Wilmington, DE USA.

For New Castle County Division of Police, New Castle County, New Castle County Employees' Retirement System Board of Trustees, DEFENDANTS: Eric L Episcopo, New Castle County Law Dept, New Castle, DE USA.

For New Castle County Division of Police, DEFENDANT: Megan Kochell D'Iorio, New Castle County Law Dept, New Castle, DE USA.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Gregory M. Sleet

OPINION: MEMORANDUM AND ORDER

## I. INTRODUCTION

On July 29, 2002, Ronald W. Breitigan ("Breitigan") filed the above-captioned action alleging age discrimination in violation of 29 U.S.C. § 623 [*2] *et seq.,* the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.,* and the Due Process Clauses of the Fifth and Fourteenth Amendments. n1 Specifically, Breitigan alleges that the New Castle County Police Department ("the Department") and the New Castle County Employees' Retirement System Board of Trustees ("the Trustees") impermissibly forced him to retire at the age of fifty-five. He has also named the State of Delaware Board of Pension Trustees ("State Board") as a defendant because he contends that its involvement is required to effectuate his remedy of choice.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 Although this case was originally assigned to the Honorable Joseph Farnan, Jr., it was reassigned to the present court on April 9, 2003.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Presently before the court are defendants' motions to dismiss. For the following reasons, the court will grant these motions.

## II. BACKGROUND

On June 27, 1988, Breitigan began his employment as a New Castle County Police Officer. He remained with the Department [*3] until his retirement on May 22, 2001, which was mandatory pursuant to New Castle County Code Section 26.04.106(A). Upon his retirement, he received a pension benefit based, in part, on his thirteen years of service with the Department.

Following his termination, he obtained employment with the Delaware Division of Alcohol and Tobacco Control. In this capacity, he is now a member of the State Employee's Pension Plan, which is managed and administered by the State Board. He maintains,

REDACTED VERSION – PUBLICLY FILED
2003 U.S. Dist. LEXIS 12073

however, that his current salary is significantly lower than what he earned as a county policy officer, and he has lost all service credit from his county police service. Thus, when he retires at age sixty-five, he will have thirteen years of pension credit under the county plan and ten years under the State Employees' plan. The present lawsuit seeks to redress this situation, in part, by requesting that his current membership in the State Employees' Plan be consolidated with his prior membership in the County Employees' Retirement System.

## III. STANDARD OF REVIEW

[HN1]The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits [*4] of the case. *See Kost v. Kozakiewicz,* 1 F.3d 176 at 183 (3d Cir. 1993). Thus, in deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990). In particular, the court looks to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer." *Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988). However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3rd Cir. 1997). The court will only dismiss a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)). [*5] Thus, in order to prevail, a moving party must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

## IV. DISCUSSION

### A. New Castle County's Motion to Dismiss

The County seeks to dismiss Breitigen's first amended complaint because (1) service of process was improper; (2) the Department and the Trustees are non sui juris; and (3) the complaint fails to state a claim. Because the court concludes that the case must be dismissed on the first two grounds, it need not reach the third.

### 1. Insufficiency of Service

On October 30, 2002, Breitigan served the original complaint against the Department on the County Executive and Chief Administrative Officer. He served his amended complaint, which added the Trustees, on March 6, 2003. Apparently acting pursuant to Federal Rule of Civil Procedure 5, he served the amended complaint on the New Castle County Law Department, rather than on the parties themselves. The Department and the Trustees now maintain that the suit against them must be dismissed for improper service. For [*6] the following reasons, the court agrees that service was improper.

While Breitigan is correct that Federal Rule of Civil Procedure 5 permits certain papers and pleadings to be served on the party's attorney, he must first have effected proper service pursuant to Federal Rule of Civil Procedure 4. He has failed to do so in the present case. Specifically, if, as Breitigan argues, the Department is a suable entity in and of itself, service of the original complaint must have been effected on the Chief of Police as Chief Executive Officer for the New Castle County Police Department. There is no dispute that the original complaint was served only on the County Executive and Chief Administrative Officer. Accordingly, service of the amended complaint via certified mail to First Assistant County Attorney Megan D'Iorio is clearly improper.

Additionally, the Trustees were not a party to the original complaint. Thus, there can be no dispute that service on their attorney pursuant to Federal Rule of Civil Procedure 5 in the first instance was improper.

### 2. Non-Suable Entities

Although the court has concluded that service was improper as to both the Department and the Trustees, its decision [*7] to dismiss the case against them need not rest solely on the lack of proper service. Rather, the court further finds that neither the New Castle County Police Department nor the Trustees are suable entities.

[HN2]The question of a state entity's amenability to suit is governed by state law. FED. R. CIV.P. 17(b). Furthermore, [HN3]"if the board or department is not a corporate body it cannot be sued as such, e.g., a police board, a board of workhouse directors, a board of park commissions, a housing authority, or a board of public works ...." 3 EUGENE MCQUILLAN, THE LAW OF MUNICIPAL CORPORATIONS, § 12.40 (1990).

In the present case, as is made clear by the New Castle County Code, the New Castle County Police Department and Trustees are not separate entities for purposes of suit, but rather, are distinct departments or entities of the County government itself. *See*

DEL.CODE ANN. 9, §§ 1331, 1332, 1384 (setting forth the duties and powers of the Department and the Trustees, but failing to list a provision for suing or being sued); NCCC §§ 2.05.200, 2.05.505. Additionally, the court finds that neither the Department nor the Trustees took action to terminate Breitigan's employment. Indeed, [*8] the Trustees did not act until Breitigan voluntarily filed his pension application on October 31, 2001. The Trustees then processed this application in accordance with the terms of the County Code. The Trustees have no authority to deviate from the terms of the Code, and simply, as a ministerial matter, authorized Breitigan's pension application. Furthermore, Breitigan's employment was terminated by the New Castle County government as an administrative matter consistent with the terms of the current New Castle County Code, specifically, Merit System Rules Pension Plan, Div. 26.03.900 Separation and Disability, § 26.03.908 Retirement. Nothing on these facts even arguably demonstrates that the Department or the Trustees could be considered a corporate body separate and apart from the County government itself.

As the Department and Trustees are non sui juris, this action must be dismissed as to them. In so holding, however, the court expresses no opinion on the merits of this action were Breitigan to name the proper entity as a defendant.

**B. The State of Delaware's Motion to Dismiss**

The State Board controls and manages the Delaware Public Employees' Retirement System, [*9] which in turn controls and manages the funds for numerous public employee pension and retirement plans. See DEL.CODE ANN.tit. 29, § 8308. Included in its control are the State Employees' Pension plan, and the County and Municipal Police/Firefighter Retirement Fund. The State Board also manages the County and Municipal Employees' Retirement Fund, which covers all non-police county employees.

As Breitigan acknowledges, the crux of his complaint is "the wrongful conduct by the County Defendants in terminating his employment and cutting off his salary and pension rights." As redress for this alleged wrong, he seeks to consolidate his current membership in the State Employees' Plan with his prior membership in the County Employees Retirement System. It is as a result of this desire to consolidate his retirement benefits that he seeks a declaratory judgment against the State Board. For the following reasons, the court concludes that Breitigan's declaratory judgment claim must fail.

[HN4]Article III, Section 2 of the United States Constitution requires the existence of an actual case or controversy before a federal court may exercise jurisdiction over a matter. In order to determine [*10] the difference between a hypothetical question and an actual controversy in an action for declaratory judgment, the "question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941). The Court of Appeals for the Third Circuit has formulated the following three-part test to determine whether sufficient "ripeness" exists for the purposes of a declaratory judgment: (1) whether the parties' interests are adverse, (2) whether a judicial judgment would be conclusive as to rights; and (3) the practical help, or utility of that judgment. Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - -
- - - - - -

n2 In Abbott Labs v. Gardner, 387 U.S. 136, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967), the Supreme Court established a two-part test for determining whether a prayer for a declaratory judgment is ripe. Specifically, [HN5]the Court directed lower courts to consider (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." Id. at 149. Contrary to Breitigan's assertions, however, the Third Circuit's Step-Saver test is not a separate and distinct test from that described in Abbott Labs, but is merely a refinement of the Abbott Labs test. See Philadelphia Fed. of Teachers v. Ridge, 150 F.3d 319, 323, n.4 (3d Cir. 1998) (explaining that the Third Circuit's refinement simply alters the headings under which various factors are placed).

- - - - - - - - - - - End Footnotes - - - - - - - -
- - - - - -

[*11]

1. Adversity of Interests

In order for Breitigan [HN6]to satisfy the adversity requirement of the ripeness test, he must show either (1) present adversity of legal interests between the parties; or (2) immediacy and reality of future harm. See Moore Corp. Ltd. v. Wallace Computer Srvs., Inc., 898 F. Supp. 1089, 1095 (D. Del. 1995). In the present

case, no adversity of legal interest exists between the State Board and Breitigan. He has not applied for eligibility for retirement pension benefits from his past New Castle County employment, nor from his current Delaware Division of Alcohol and Tobacco Control employment. Indeed, in his opposition brief, he states that, "*[a]ssuming* that the State Board takes the position that it should administer the State Employees' Plan as written, it necessarily must take an adverse legal interest from the plaintiff regarding his pension rights." *See* D.I. 46 at 6 (emphasis added). Therefore, Breitigan himself acknowledges that it is unclear at the present time how the State Board will act when called upon to determine his retirement benefits. Thus, any adversity between the parties on the facts of the present dispute is purely [*12] hypothetical at this point.

Finally, Breitigan has made no allegation that he has, or will, in the immediate future, apply for pension benefits from the State Board. Thus, there is no immediacy and reality of future harm.

2. Conclusivity of Judicial Decree

The second part of the *Step-Saver* test requires the court to consider whether any decision it makes will conclusively define and clarify the legal rights of the parties, or whether its decision would amount to no more than an advisory opinion. *See* Step-Saver, 912 F.2d at 648. For the following reasons, the court concludes that any decision in this case would be tantamount to an impermissible advisory opinion.

Breitigan's requested declaratory judgment against the State Board would only determine his eligibility to a state pension based on the years he spent employed at his respective jobs to the present time. The court cannot account for all future contingencies that may occur between now and the day Breitigan retires from public service. As such, even were the court to find that the New Castle County Police Department had impermissibly forced Breitigan into retirement, and that the State Board should thus [*13] adjust his pension plan to account for County's actions, at the present time, there is no way of knowing how long Breitigan will actually remain in the employ of the State. It is apparent then, that for the court to entertain this declaratory judgment action would merely be advising Breitigan of his rights upon a hypothetical state of facts.

3. Utility

To satisfy the final *Step-Saver* prong, the court must find that its decree will be useful in the sense that it will affect the parties' plans or actions. *See* Step-Saver, 912 F.2d at 649, n.9. In the present case, the court finds that Breitigan's declaratory judgment action fails to satisfy this prong of the *Step-Saver* test as well. Specifically, Breitigan himself states in his opposition brief that, "the main thrust of [his] claims is the wrongful conduct by the County Defendants in terminating his employment and cutting off his salary and pension rights. The State Board fails to discuss the fact that [his] separate claims against the County Defendants will continue with or without the State Board's involvement." D.I. 46 at 9. As Breitigan acknowledges that his action against the State Board will have little, [*14] if any, effect on the gravamen of his complaint, the court must find that no useful purpose would be served by entertaining a declaratory judgment action against the State Board at this time.

## V. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The New Castle County Police Department and Employees Retirement System Board of Trustees' Motion to Dismiss (D.I. 36) is GRANTED.

2. The State of Delaware Board of Pension Trustees' Motion to Dismiss (D.I. 42) is GRANTED.

3. With regard to his allegations against New Castle County, Breitigan shall amend his complaint to reflect suit against the proper entity within fifteen (15) days of the date of this order.

4. Should Breitigan fail to timely amend his complaint, the above-captioned action shall be dismissed, with prejudice.

Dated: July 16, 2003

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 5

REDACTED VERSION – PUBLICLY FILED

1986 U.S. Dist. LEXIS 29723; 229 U.S.P.Q. (BNA) 61

Carrot Components Corporation, Plaintiff v. Thomas & Betts Corporation, Defendant

Civil Action No. 85-5133

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

1986 U.S. Dist. LEXIS 29723; 229 U.S.P.Q. (BNA) 61

February 3, 1986, Decided; February 11, 1986, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant moved for dismissal of the claim for declaratory relief under Fed. R. Civ. P. 12 (b)(1) because the claim did not state an actual controversy under 28 U.S.C.S. § 2201, dismissal under Fed. R. Civ. P. 12(b)(6), and for attorneys' fees under 35 U.S.C.S. § 285.

**OVERVIEW:** Plaintiff brought a declaratory judgment action against defendant after initiating negotiations for a patent license, seeking declarations that defendant's patent was invalid or plaintiff's product did not infringe and seeking damages in a second count claiming defendant had engaged in monopolistic business practices. The court granted defendant's motion to dismiss the first count due to a lack of a case or controversy under Fed. R. Civ. P. 12 (b)(1), holding that potential future litigation was not an actual controversy upon which jurisdiction could be based. The court granted the motion to dismiss the second count for failure to state a claim under Fed. R. Civ. P. 12(b)(6), because plaintiff failed to allege that defendant had or had attempted to enforce its fraudulently obtained patent against plaintiff. Motion for attorneys' fees denied as case was not exceptional.

**OUTCOME:** Motion to dismiss count one of the claim granted because plaintiff did not show an actual controversy. Motion to dismiss count two granted due to failure of plaintiff to state a claim. Motion for attorneys' fees denied as case was not exceptional, as some issues were close ones.

**CORE TERMS:** patent, declaration, infringement, pin, apprehension, negotiations, declaratory judgment, electronic, licensing agreement, inventory, fraudulently obtained, actual controversy, parties agree, declaratory, industrial, marketing, violative, connectors, detriment, asserting, deficient, issuance, plead, wait, failure to state a claim, advisory opinion, importation, affiliated, proceeded, negotiate

## LexisNexis(TM) Headnotes

*Civil Procedure > Justiciability > Case or Controversy*

*Civil Procedure > Remedies > Declaratory Relief*

[HN1]The power of the court to grant a declaratory judgment treads close to the "case or controversy" limits of Article III of the Constitution. The court is not allowed to answer hypothetical questions regarding that which might arise between parties. Rather, the controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.

*Patent Law > Inequitable Conduct > Anticompetitive Conduct*

[HN2]The enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act.

*Civil Procedure > Justiciability > Case or Controversy*

*Patent Law > Infringement Actions > Defenses > General Overview*

[HN3]An eagerness to expand without uncertainty does not empower this court to issue an advisory opinion as to validity of the defendant's patents. A case or controversy, to exist, must stem from the patentee's threatening or ominous conduct.

*Civil Procedure > Justiciability > Case or Controversy*

[HN4]The fundamental requirement for a declaratory action is that there be an actual controversy. The court is one of limited jurisdiction, and the court regards the background threat of litigation too attenuated a basis for the court's exercise of jurisdiction.

*Antitrust & Trade Law > Intellectual Property > Bad Faith, Fraud & Nonuse*

*Patent Law > Inequitable Conduct > Anticompetitive Conduct*

[HN5]The first essential element of a claim of a violation of 15 U.S.C.S. §§ 12 and 15 through the use of fraudulently obtained patents is that plaintiff must plead that the patent was obtained by knowing and willful misrepresentation. The second essential factor is the allegation that defendant has wielded exclusionary power through the use of this patent, in a relevant market, to the detriment of plaintiff.

REDACTED VERSION – PUBLICLY FILED

1986 U.S. Dist. LEXIS 29723; 229 U.S.P.Q. (BNA) 61

*Civil Procedure > Justiciability > Standing*

*Patent Law > Inequitable Conduct > Burdens of Proof*

[HN6]To have standing to sue plaintiff must at least be able to allege facts that indicate that the defendant has enforced, or has sought to enforce, or has threatened to enforce its fraudulently obtained patent against the plaintiff itself.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*

[HN7]35 U.S.C.S. § 285 allows for fees only in "exceptional" cases.

COUNSEL: [*1]

Sperry, Zoda & Kane, John J. Kane, Esq., for Plaintiffs.

LERNER, DAVID, LITTENBERG, KRUMHOLZ & MENTLIK, for Defendants.

OPINIONBY: THOMPSON

OPINION: OPINION

ANNE E. THOMPSON, U.S.D.J.

THE COURT: Plaintiff in this action, Carrot Components Corporation ("Carrot"), began operations in July of 1985 for the purpose of manufacturing and marketing insulation displacement connectors ("IDC"). (Declaration of R.G. Woelfil, paras. 2-3). Carrot is the creation of two other companies, G & H Technology and Odu-Kontact Elecstronik ("ODU"), both participants in the industrial electronic components industry. (Declaration of R.G. Woelfil, Exhibit C, p. 14.) Plaintiff brought this action against defendant Thomas & Betts Corporation, seeking a declaration of the invalidity of two patents held by Thomas & Betts, or in the alternative for a declaration that certain of Carrot's products did not constitute an infringement of those patents, and for damages for Thomas & Betts' alleged monopolistic business practices in connection with the patented products. In the present motion, defendant seeks dismissal of the claim for declaratory relief pursuant to F.R.C.P. 12(b)(1), asserting that the count does not state [*2] an "actual controversy" pursuant to the terms of 28 U.S.C. § 2201; dismissal of the antitrust claim pursuant to F.R.C.P. 12(b)(6); and for attorney's fees pursuant to 35 U.S.C. § 285.

This litigation concerns two patents held by defendant for 50 pin IDCs. In 1984, defendant proceeded before the International Trade Commission ("ITC") in an attempt to prevent ODU and others from causing the importation of IDCs in a manner which allegedly infringed on the patents. The ITC proceedings were settled in June of 1985. The Settlement Agreement filed in this action as Exhibit 1 to the Declaration of William Mentlik sets forth the terms by which the parties agreed to the discontinuance of the ITC action. ODU agreed to cease importation of the offending IDCs for a period of three years, without admitting to any infringement. Thomas & Betts agreed in turn to refrain from filing any court action in connection with the alleged infringements and to release ODU from all claims in connection with the alleged infringements if the agreement is honored for a period of three years.

Carrot subsequently entered the IDC market, and proceeded to sell 50 pin IDCs manufactured by either ODU or an affiliated [*3] company, G & H Technologies, Inc. Carrot apparently contacted Thomas & Betts on two occasions prior to the filing of this lawsuit, for the purpose of inquiring into the possibilities of arranging a licensing agreement under the patents. These contracts were made through an attorney who did not identify his client. These contacts were made on October 17 and 23, 1985. Carrot's offer to negotiate was neither accepted nor denied. (Declaration of Robert M. Roderick, dated January 13, 1986.) This action was filed on October 25, 1985.

Defendant now moves for dismissal of the first count, asserting that plaintiff cannot meet the jurisdictional requirements for a declaratory judgment. [HN1]The power of this Court to grant a declaratory judgment treads close to the "case or controversy" limits of Article III of the Constitution. We are not allowed to answer hypothetical questions regarding that which might arise between parties. Rather, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." v. Haworth, 300 U.S. 227, 240-41 (1937). Declaratory relief is often sought by parties who are disinclined to suffer the consequences [*4] of an act which is arguably violative of another's rights, but prefer to have the legal significance of an action determined by the court in advance. Parties are thus able rationally to order their affairs without suffering the uncertainties inherent in the alternative course of conduct, by which it must wait for its adversary to bring suit. Id. at 230.

The parties agree that the above principles, in the context of patent litigation, create the requirement that the plaintiff demonstrate both "a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question," and a showing that it has "actually produced the accused device or [is] actually prepared to produce such a device." Jervis B. Webb Co. v. Southern Systems, Inc., 742 F.2d 1388, 1398-99 (Fed. Cir. 1984).

We have considered the "totality of the circumstances" of these parties' dealings in addressing this issue. See C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed.

Case 1:04-cv-00174-JJF    Document 116-5    Filed 09/02/2005    Page 17 of 28

REDACTED VERSION – PUBLICLY FILED
1986 U.S. Dist. LEXIS 29723; 229 U.S.P.Q. (BNA) 61

Cir. 1983). We find that this is a close case; we find, however, that a number of factors, when considered cumulatively, compel a finding that plaintiff has failed to support its claim.

The [*5] first three factors upon which we rely relate to plaintiff's reasonable apprehension that it will face an infringement suit. First, we note that plaintiff at least broached the subject of a license for the patent with defendant. In his Declaration, Robert M. Rodrick, counsel for defendant, states that he communicated to Boris Haskell, counsel for plaintiff, the fact that defendant did not rule out the possibility of a licensing agreement; he did, however, indicate that defendant required direct negotiations rather than blind negotiations through an intermediary. Mr. Haskell's Declaration dated January 16, 1986 is of great interest in this regard. In setting forth his recollection of the telephone conversation he had with Mr. Roderick two days before this complaint was filed, Mr. Haskell states:

"What I did state was that plaintiff would wait a reasonable time for defendant's reply to my request to enter into license negotiations. Then, regardless of the response, plaintiff would file a declaratory judgment action to protect plaintiff's interests. That action would inform defendant of plaintiff's identity, and fully inform defendant of plaintiff's position in respect to the patents [*6] in question, and the parties could then either proceed to the conference table or to discovery."

(Haskell Declaration of January 16, para. 2.)

This action is close to the line between the proper use of declaratory actions by a litigant apprehending imminent suit and misuse of the action by a litigant seeking either an advisory opinion or bargaining leverage. We must regard the above-quoted language as evidence that this action falls into the latter category. It is clear that plaintiff intentionally truncated its negotiations toward an agreement with defendant in favor of bringing this action. We find that, given the surviving negotiations for a licensing agreement, plaintiff's apprehension of a suit was not reasonable.

The second factor we consider is the ongoing challenge to the patent before the Patent and Trademark Office. (Declaration of William Mentlik, dated November 26, 1985, Exhibits 2-4.) We find that these proceedings cast sufficient doubt upon the continuing validity of the patents that doubt is raised as to the objective possibility of defendant's bringing suit to enforce them. The basis of the challenges, as detailed by the attachments to Mr. Mentlik's declaration, [*7] is the allegedly fraudulent assertion of the holder of the patent that the IDCs had not been in public use prior to the issuance of the patent. In Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174 (1965), the United States Supreme Court found that [HN2]"the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act. . .." This factor appears to counsel against immediate suit while the challenge pends.

The third factor is the agreement between OBU and Thomas & Betts. The conclusion of the dispute between these two parties by agreement rather than by judgment indicates a willingness, known to plaintiff, on the part of defendant to negotiate disputes regarding the patents. We agree with plaintiff's assertion that the agreement (Exhibit 1 to the November 26, 1985 Mentlik Declaration) is favorable to defendant, indicating the possibility of an aggressive protection of the patents by defendant. On balance, however, we can not find that the existence of this agreement allows the reasonable apprehension of suit.

The fourth and final factor we consider relates to the second justiciability criterion delineated [*8] in Jervis B. Webb Co. v. Southern Systems, Inc., supra -- the preparedness on the part of plaintiff to produce the device. At present, plaintiff markets 50 pin IDCs which the parties agree are permissibly distributed by the terms of the OBU-Thomas & Betts agreement. Plaintiff is identified in the trade literature appended to the Woelf Declaration as marketers and not manufacturers of electronic equipment. ("Carrot Components. . . is chartered to market commercial and industrial electronic components. . .." Declaration of R.G. Woelfl, Exhibit C, p. 14) It is clear that plaintiff has an inventory of the IDCs, which it obtained from ODU, and has available to it addition inventory of the 50 pin IDCs now held by G & H Technologies. (Woelfil Declaration, paras. 4-5) We find that plaintiff has failed to establish that it has a present ability or intention to produce or market IDCs which may infringe on the patents. The Woelfil Declaration clearly sets forth the business intentions of plaintiff to expand into the market now dominated by defendant. It is surely sound business planning to attempt to avoid risks and to clarify the legal ramifications of such expansion. The Woelfil [*9] Declaration provides the Court with a picture of a company which is looking to the future. It is clear that plaintiff would prefer to deal in a market devoid of the obstacles presented by defendant's patents. As a distributor of IDCs, however, it has not demonstrated the imminence of conflict with defendant. Indeed, the record contains many references to the possibility that plaintiff could become a licensee of defendant's patent. It prefers the prospect of purchasing 50 pin IDCs from a company with which it is affiliated. Plaintiff does not describe, however, how

REDACTED VERSION – PUBLICLY FILED
1986 U.S. Dist. LEXIS 29723; 229 U.S.P.Q. (BNA) 61

this preference relates to a reasonable apprehension of suit.

The inventory of 50 pin IDCs available to plaintiff leads the Court to find that the possibility of any conflict with defendant is remote. It will be in a position to act in conflict with defendant, if ever, only when its stockpile of nonoffending IDCs is depleted.

We cannot find, then, that plaintiff has established the readiness to act which is a jurisdictional prerequisite to this Court's issuance of a declaratory judgment? As the trial court stated in Indium Corporation of America v. Semi-Alloys, Inc., 566 F.Supp. 1344, 1348 (N.D.N.Y. 1983)("Indium [*10] I"), [HN3]an "eagerness to expand without uncertainty does not empower this court to issue an advisory opinion as to validity of the defendant's patents. A case or controversy, to exist, must stem from the patentee's threatening or ominous conduct."

"We conclude that no case or controversy exists here. "The [HN4]fundamental requirement for a declaratory action is that there be an actual controversy." Indium Corporation of America v. Semi-Alloys, Inc., No. 85-2177, slip op. at 11 (Fed. Cir. December 26, 1985)("Indium IV"). The controversy, if any, in this case exists in the future. This is a court of limited jurisdiction, and we regard the background threat of litigation too attenuated a basis for our exercise of jurisdiction over this issue.

We now address Count II of the complaint, which alleges that the actions which formed the basis of Count I, plus the alleged monopolization of the market by defendant, constitute an unlawful restraint on trade. This motion, brought pursuant to Rule 12(b)(6), must necessarily be determined by reference to the materials outside the pleadings considered in connection with the 12(b)(1) motion. Defendant alleges that plaintiff has failed to assert direct [*11] injury as a result of defendant's alleged anti-competitive conduct, and that plaintiff has failed to allege that defendant has "monopolized" the market, as opposed to attempting to [HN5]monopolize. The essential elements of a claim of a violation of 15 U.S.C. paras 12 and 15 through the use of fraudulently obtained patents are discussed in Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., supra, 382 U.S. 172, 177-78 (1965). Plaintiff must plead that the patent was obtained by knowing and willful misrepresentation. We find this allegation sufficiently pled in paras. 11 and 13 of the complaint, realleged in Count II at para. 15. The second essential factor is the allegation that defendant has wielded exclusionary power through the use of this patent, in a relevant market, to the detriment of plaintiff. Id. We find that the complaint is deficient in this regard.

Paragraph 16 of the complaint states that defendant, allegedly knowing that the patents are invalid, continues "to seek to enforce said . . . patents against competitors and to preclude others from making and marketing connectors alleged to infringe said . . . patents. . .." We regard this allegation [*12] to be deficient in describing detriment to plaintiff. We believe that plaintiff has failed to establish that defendant had sought to enforce the patent against plaintiff, or that plaintiff had some reasonable basis for fearing such attempted enforcement. [HN6]This is a question of standing to sue; we agree with the Indium I that

"plaintiff must at least be able to allege facts that indicate that the defendant has enforced, or has sought to enforce, or has threatened to enforce its fraudulently obtained patent against the plaintiff itself."

566 F.Supp. at 1352-53.

We will grant the motion to dismiss Count II for failure to state a claim.

We will deny the request for fees pursuant to 35 U.S.C. § 285. We do not regard plaintiff's action as "specious." [HN7]Section 285 allows for fees only in "exceptional" cases, and we have found the issues to be close ones, well supported by counsel. No award of fees is warranted.

We find argument that defendant's motion is untimely unpersuasive for the reasons set forth in Madden v. Cleland, 105 F.R.D. 520, 524-25 (N.D. Ga. 1985).

We will enter our own order. This dismissal is without prejudice to plaintiff's repleading if and when it is [*13] able to plead the requisite allegations as discussed in this opinion.

ORDER

This matter having come before the court on the defendant's motion for dismissal pursuant to FED. R. CIV. P. 12(b)(1) and (6), and for attorney's fees pursuant to 35 U.S.C. § 285, and the court having considered the moving and opposing papers and the argument of counsel and for good cause shown;

It is on this 7th day of February 1986,

ORDERED that Count I of the complaint be dismissed for lack

of subject matter jurisdiction; and it is further

ORDERED that Count II of the complaint be dismissed for failure to state a claim upon which relief can be granted; and it is further

REDACTED VERSION – PUBLICLY FILED

1986 U.S. Dist. LEXIS 29723; 229 U.S.P.Q. (BNA) 61

ORDERED that defendant's motion for attorney's fees
is denied.

REDACTED VERSION – PUBLICLY FILED

# EXHIBIT 6

REDACTED VERSION – PUBLICLY FILED

LEXSEE 2005 US DIST LEXIS 17075

CLASSEN IMMUNOTHERAPIES, INC., Plaintiff, v. BIOGEN IDEC, et al., Defendants.

CIVIL NO. WDQ-04-2607

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

*2005 U.S. Dist. LEXIS 17075*

July 22, 2005, Decided
July 22, 2005, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff sued defendants for patent infringement. The patents at issue involved a mechanism for evaluating the safety of vaccine administration schedules by comparing or identifying the adverse events associated with various vaccine schedules. Before the court were three defendants' motions to dismiss, and the motion of several defendants for sanctions.

OVERVIEW: Plaintiff's general allegation failed to delineate the particular acts of infringement attributable to each defendant; thus it did not provide facts sufficient to inform one of the defendants of the basis for plaintiff's claims. Also, because the other two defendants' alleged participation in a study evaluating risks associated with various vaccination schedules was reasonably related to the development and submission of information required under the Federal Food, Drug, and Cosmetic Act, those defendants' motions to dismiss plaintiff's patent infringement claims were granted, as their alleged acts fell within the 35 U.S.C.S. § 271(e)(1) exemption. As to the motion for sanctions, plaintiff had not performed an infringement analysis, nor offered an explanation for its failure. That could not be found to constitute a reasonable prefiling inquiry for the purpose of filing patent infringement claims. However, the court held that the dismissal of plaintiff's claims against those defendants should be sufficient to discourage plaintiff from filing additional pleadings before conducting a reasonable prefiling inquiry.

OUTCOME: The motions to dismiss were granted, and the motion for sanctions was granted to the extent that the claims against those defendants were dismissed, and denied in part.

CORE TERMS: vaccine, patent, infringement, vaccination, collectively, prefiling, manufacture, administer, hepatitis, exemption, patented, lawsuit, patent infringement, general allegation, patented invention, motions to dismiss, reasons discussed, incidence, mediated, protocol, disorders, chronic, license, entity, immune, motion to dismiss, reasonable basis, risks associated, facts sufficient, factual inquiry

LexisNexis(R) Headnotes

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] Under *Fed. R. Civ. P. 12(b)(6)*, dismissal of a complaint for failure to state a claim is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

2005 U.S. Dist. LEXIS 17075, *

[HN2] The function of *Fed. R. Civ. P. 12(b)(6)* is to test the legal sufficiency of the complaint, not the facts that support it. Thus, a complaint may be dismissed as a matter of law only if it lacks a cognizable legal theory, or it alleges insufficient facts under a cognizable legal theory.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN3] In determining whether to dismiss a complaint, the court must accept the well-pled material allegations as true, viewing the facts and the reasonable inferences drawn therefrom in the light most favorable to the plaintiff. The court, however, is not bound to accept as true a legal conclusion couched as a factual allegation.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN4] *Fed. R. Civ. P. 8(a)(2)* requires that pleadings provide a short and plain statement of the claim showing that the pleader is entitled to relief. This requirement is by no means onerous; instead, it is designed to ensure that the complaint will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The liberal notice pleading of *Fed. R. Civ. P. 8(a)* is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. Under this pleading system, a plaintiff must only set forth facts sufficient to allege each element of his claim.

*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN5] A plaintiff does not satisfy *Fed. R. Civ. P. 8* when the complaint lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.

*Patent Law > Infringement Actions > Exclusive Rights > Manufacture, Sale & Use*
[HN6] See *35 U.S.C.S. § 271*(a).

*Patent Law > Infringement Actions > Exclusive Rights > Manufacture, Sale & Use*
[HN7] See *35 U.S.C.S. § 271*(e)(1).

*Patent Law > Infringement Actions > Exclusive Rights > Manufacture, Sale & Use*
[HN8] *35 U.S.C.S. § 271*(e)(1) provides a wide berth for the use of patented drugs in activities related to the federal regulatory process. *35 U.S.C.S. § 271*(e)(1)'s exemption extends to all uses of patented inventions that are reasonably related to the development and submission of any information under the Federal Food, Drug, and Cosmetic Act.

*Patent Law > Infringement Actions > Exclusive Rights > Manufacture, Sale & Use*
[HN9] Where a drugmaker has a reasonable basis for believing that a patented compound may work, through a biological process, to produce a particular physiological effect, and uses the compound in research that, if successful, would be appropriate to include in a submission to the Food and Drug Administration, that use is reasonably related to the development and submission of information under federal law for *35 U.S.C.S. § 271*(e)(1) purposes.

*Civil Procedure > Counsel*
*Civil Procedure > Sanctions > Baseless Filings*
[HN10] Every paper filed in a lawsuit in federal court must be signed by an attorney. *Fed. R. Civ. P. 11(a)*.

*Civil Procedure > Sanctions > Baseless Filings*
[HN11] By presenting a signed paper to the court, the attorney certifies that he has performed an inquiry reasonable under the circumstances and has come to three conclusions: (1) that the pleading or motion is not being presented for any improper purpose; (2) that the claims and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and (3) that the allegations and other factual contentions have evidentiary support. *Fed. R. Civ. P. 11(b)(1)-(3)*.

*Civil Procedure > Sanctions > Baseless Filings*
[HN12] To be reasonable, a plaintiff's prefiling factual investigation must uncover some information to support the allegations in the complaint.

*Civil Procedure > Sanctions > Baseless Filings*

2005 U.S. Dist. LEXIS 17075, *

[HN13] A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation. That is, where there is no factual basis for a plaintiff's allegations, the complaint violates *Fed. R. Civ. P. 11*'s factual inquiry requirement.

*Civil Procedure > Sanctions > Baseless Filings*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN14] If challenged, a patent holder bringing an infringement claim must be able to demonstrate to the court and the alleged infringer exactly why it believed before filing suit that it had a reasonable chance of proving infringement. Failure to do so should result in the district court's imposition of sanctions unless the plaintiff has a sound excuse or considerable mitigating circumstances.

*Civil Procedure > Sanctions > Baseless Filings*
[HN15] Requiring parties to determine with accuracy that they are suing the correct parties is the most basic factual inquiry in any lawsuit.

*Civil Procedure > Sanctions > Baseless Filings*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN16] In patent infringement cases, a party conducting a prefiling inquiry must at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused practice and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted. The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under *Fed. R. Civ. P. 11.*

*Civil Procedure > Sanctions > Baseless Filings*
[HN17] *Fed. R. Civ. P. 11* attempts to discourage the needless filing of groundless lawsuits. In imposing sanctions, the court should apply a sanction that furthers *Fed. R. Civ. P. 11*'s purpose and is the least severe sanction adequate to such purpose.

COUNSEL: [*1] For Classen Immunotherapies, Inc., Plaintiff: Joseph J Zito, ZITO tlp, Damascus, MD.

For Biogen Idec, Defendant: Amanda Page Masselam, David Bryan Bassett, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA; David Andrew Wilson, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC.

For GalaxoSmithKline, Defendant: Elizabeth A Brown, Covington and Burling, San Francisco, CA; George F Pappas, Jeffrey B Elikan, Kevin Barry Collins, Covington and Burling, Washington, DC.

For Chiron Corporation, Defendant: Amy E Carr Trexler, David N Farsiou, Joseph Lucci, Woodcock Washburn LLP, Philadelphia, PA; Henry R Abrams, Saul Ewing LLP, Baltimore, MD.

For Merck & Co., Inc., Defendant: James Walter Parrett, Jr., Mary Brewster Graham, Morris Nichols Arsht and Tunnell, Wilmington, DE; James P Ulwick, Kramon and Graham PA, Baltimore, MD.

For Kaiser Permanente Ventures, Kaiser Permanente International, Kaiser Permanente Insurance, The Permanente Federation, LLC (Del.Corp.), The Permanente Company, LLC, (DeLCorp.), The Permanente Foundation, The Permanente Medical Group, Inc., Kaiser Foundation Hospitals, Kaiser Foundation Added Choice Health Plan, Inc., Kaiser Foundation [*2] Health Plan Inc., Defendants: Elisabeth Santa Traugott, Michael Allen Jacobs, Morrison and Foerster LLP, San Francisco, CA; George Brian Busey, Morrison and Foerster LLP, Washington, DC; Laurie A Hand, Morrison and Foerster LLP, McLean, VA.

For Merck & Co., Inc., Counter Claimant: James P Ulwick, Kramon and Graham PA, Baltimore, MD.

JUDGES: William D. Quarles, Jr., United States District Judge.

OPINIONBY: William D. Quarles, Jr.

2005 U.S. Dist. LEXIS 17075, *

## OPINION:

### MEMORANDUM OPINION AND ORDER

Classen Immunotherapies, Inc. ("Classen") has sued Biogen IDEC ("Biogen"), GlaxoSmithKline ("GSK"), Chiron Corporation ("Chiron"), Merck & Co., Inc., Kaiser Foundation Health Plan, Inc., Kaiser Permanente Ventures, Kaiser Permanente International, Kaiser Permanente Insurance Company, The Permanente Federation, LLC, The Permanente Company, LLC, The Permanente Foundation, The Permanente Medical Group, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Added Choice Health Plan, Inc. for patent infringement. Pending are Chiron, Biogen, and GSK's motions to dismiss, and the various Kaiser, Kaiser Permanente, and Permanente Defendants' motion for sanctions. For the reasons discussed below, the motions to dismiss will be granted, [*3] and the motion for sanctions will be granted in part and denied in part.

### BACKGROUND

Classen owns the following United States Patent Numbers: (1) 6,420,139 ("the 139 patent"); (2) 6,638,739 ("the 739 patent"); (3) 5,728,385 ("the 385 patent"); and (4) 5,723,283 ("the 283 patent") (collectively, "the patents in suit"). Am. Compl. at P 3. Each patent involves a mechanism for evaluating the safety of vaccine administration schedules by comparing or identifying the adverse events associated with various vaccine schedules. Classen alleges that the Defendants:

> collectively license, manufacture, use, market, distribute and sell vaccines for human use. . . . Defendants' products have participated in studies on the effects of the timing of administration of these vaccines and incidence of chronic immune mediated disorders. The Defendants collectively publish, encourage, recommend and administer the vaccines according to a protocol which is believed to minimize the risk of incidence of chronic immune mediated disorders.

*Id.* at P 6.

### ANALYSIS

#### A. Motions to Dismiss

##### 1. Standard of Review

[HN1] Under *Federal Rule of Civil Procedure 12(b)(6)* [*4] , dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* [HN2] The function of *Rule 12(b)(6)* is to test the legal sufficiency of the complaint, not the facts that support it. *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Co., 609 F.2d 1083, 1086 (4th Cir. 1979).* Thus, a complaint may be dismissed as a matter of law only "if it lacks a cognizable legal theory, or it alleges insufficient facts under a cognizable legal theory." *Mates v. N. Am. Vaccine, Inc., 53 F. Supp. 2d 814, 822 (D. Md. 1999).* [HN3] In determining whether to dismiss a complaint, the court must accept the well-pled material allegations as true, viewing the facts and the reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *Chisolm v. TranSouth Fin. Corp., 95 F.3d 331, 334 (4th Cir. 1996).* The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986).* [*5]

##### 2. Analysis

Classen alleges that Chiron infringed and induced infringement of the patents in suit by manufacturing and supplying hepatitis B vaccines, and providing recommendations on a proper immunization schedule. It is undisputed, however, that Chiron does not manufacture, supply, or administer hepatitis B vaccines. Vavricka Dec. at P 3. Nor does Chiron provide instructions or recommendations for hepatitis B vaccines. *Id.* at P 4 .

Classen argues that Chiron licenses hepatitis B vaccines; thus it stated a claim against Chiron in its general allegation that "Defendants Biogen, Chiron, GlaxoSmithKline, Merck, and Kaiser-Permanente collectively license, manufacture, use, market, distribute and sell vaccines for human use." Am. Compl. at P 6. Chiron counters that this general allegation does not comply with *Federal Rule of Civil Procedure 8(a) (2).*

2005 U.S. Dist. LEXIS 17075, *

[HN4] *Rule 8(a)(2)* requires that pleadings provide "a short and plain statement of the claim showing that the pleader is entitled to relief."

> This requirement is by no means onerous; instead, it is designed to ensure that the complaint will give the defendant fair notice of what the plaintiff's [*6] claim is and the grounds upon which it rests. The liberal notice pleading of *Rule 8(a)* is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. Under this pleading system, a plaintiff must only set forth facts sufficient to allege each element of his claim.

*Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005)* (internal citations omitted). Classen's general allegation fails to delineate the particular acts of infringement attributable to each Defendant; thus it does not provide facts sufficient to inform Chiron of the basis for Classen's claims. *See Appalachian Enterprises, Inc. v. Epayment Solutions Ltd., 2004 U.S. Dist. LEXIS 24657, *21 (S.D.N.Y. 2004)* [HN5] (A plaintiff does not satisfy *Rule 8* when the complaint "lumps all the defendants together and fails to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong."). Accordingly, Chiron's motion to dismiss will be granted.

Classen alleges that GSK and Biogen violated its patents when they:

> participated in, facilitated and/or otherwise conducted [*7] a study believed to have begun in the late 1990's and continuing through 2001, to evaluate suggested associations between childhood vaccinations, particularly against hepatitis B and Haemophilus influenza . . . type b, and risk of developing type 1 diabetes; and to determine whether timing of vaccination influences risk.

Am. Compl. at P 7. Classen claims that the Defendants "collectively publish, encourage, recommend and administer the vaccines according to a protocol which is believed to minimize the risk of incidence in chronic immune mediated disorders." *Id.* at P 6.

*35 U.S.C. § 271(a)* provides that [HN6] "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." *Section 271(e)(1)* provides an exemption to this general rule, which provides:

> [HN7] It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention (other than a new animal drug or veterinary biological product (as those terms are [*8] used in the *Federal Food, Drug, and Cosmetic Act and the Act of March 4, 1913)* which is primarily manufactured using recombinant DNA, recombinant RNA, hybridoma technology, or other processes involving site specific genetic manipulation techniques) solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

GSK and Biogen have moved to dismiss Counts I, II, and IV of the Complaint (the 139, 739, and 283 patent claims) because their alleged acts of infringement fall within the *§ 271(e)(1)* exemption. Specifically, the Food and Drug Administration ("FDA") collects vaccine data from vaccine manufacturers after their vaccines have been approved. *See, e.g., 21 C.F.R. § 601.70 (2005)* (requiring annual progress reports of postmarketing studies); *21 C.F.R. § 600.80* (requiring reports of postmarketing adverse reactions to vaccinations). As the Defendants' alleged acts of infringement involve examining risks associated with various vaccination schedules, GSK and Biogen assert that their actions are [*9] reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs. Classen argues that the *§ 271(e) (1)* exemption applies only to drugs which have not yet been approved by the FDA, not to post approval activities associated with a drug that is already on the market.

In *Merck KgaA v, Integra Lifesciences I, Ltd.,* n1 however, the Supreme Court held that [HN8] *§ 271(e)(1)* "provides a wide berth for the use of patented drugs in activities related to the federal regulatory process." *Section*

REDACTED VERSION – PUBLICLY FILED

2005 U.S. Dist. LEXIS 17075, *

*271(e)(1)*'s exemption "extends to all uses of patented inventions that are reasonably related to the development and submission of *any* information under the [*Federal Food, Drug, and Cosmetic Act*]." *Id.* (emphasis in original). n2 Because their alleged participation in a study evaluating risks associated with various vaccination schedules was reasonably related to the development and submission of information required under the *Federal Food, Drug, and Cosmetic Act*, GSK and Biogen's motion to dismiss Counts I, II, and IV will be granted.

n1 *162 L. Ed. 2d 160, 125 S. Ct. 2372, 2380 (2005).*

[*10]

n2 [HN9] "Where a drugmaker has a reasonable basis for believing that a patented compound may work, through a biological process, to produce a particular physiological effect, and uses the compound in research that, if successful, would be appropriate to include in a submission to the FDA, that use is reasonably related' to the development and submission of information under . . . Federal law." *Id. at 2383.*

B. Kaiser Defendants' Motion for Sanctions

Classen alleges that "Kaiser-Permanente infringes [its patents] through the administration of vaccines according to the patented method." Am. Compl. at PP 28, 36, 44, and 52. Kaiser Foundation Health Plan, Inc., Kaiser Permanente Ventures, Kaiser Permanente International, Kaiser Permanente Insurance Company, The Permanente Federation, LLC, The Permanente Company, LLC, The Permanente Foundation, The Permanente Medical Group, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Added Choice Health Plan, Inc. (collectively, "the Kaiser Defendants") have moved for sanctions under *Federal Rule of Civil Procedure 11* [*11] .

[HN10] Every paper filed in a lawsuit in federal court must be signed by an attorney. *FED. R. CIV. P. 11(a).*

[HN11] By presenting a signed paper to the court, the attorney certifies that he has performed "an inquiry reasonable under the circumstances" and has come to three conclusions: (1) that the pleading or motion "is not being presented for any improper purpose"; (2) that "the claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; and (3) that the "allegations and other factual contentions have evidentiary support."

*Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1071-72 (Fed. Cir. 2002)* (citing *FED. R. CIV. P. 11(b) (1)-(3)).*

The Kaiser Defendants assert that Classen failed to conduct a reasonable prefiling factual investigation. In its original Complaint, Classen named "Kaiser Permanente, Inc.," an entity that has never existed, as a Defendant. The Kaiser Defendants' in-house counsel notified Classen [*12] of this error. Ex. H to Mot. for Sanctions (Aug. 30, 2004 Memorandum from Anne Deibert, Esq. to Joseph Zito, Esq.). In its amended Complaint, Classen named as Defendants ten Kaiser entities, some of which no longer exist, and others that do not administer vaccinations. The Kaiser Defendants also argue that Classen failed to identify the allegedly infringing vaccination protocol used by the Kaiser Defendants.

[HN12] To be reasonable, a plaintiff's prefiling factual investigation must uncover some information to support the allegations in the complaint. *Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991).*

[HN13] A complaint containing allegations unsupported by any information obtained prior to filing violates the required prefiling factual investigation. That is, where there is no factual basis for a plaintiff's allegations, the complaint violates *Rule 11*'s factual inquiry requirement.

2005 U.S. Dist. LEXIS 17075, *

*Id.* (internal citations omitted).

[HN14] If challenged, a patent holder bringing an infringement claim must be able to demonstrate to the court and the alleged infringer exactly why it believed before filing suit that it had a reasonable chance of proving infringement. [*13] *View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000).* Failure to do so should result in the district court's imposition of sanctions unless the plaintiff has a sound excuse or considerable mitigating circumstances. *Id.*

[HN15] "Requiring parties to determine with accuracy that they are suing the correct parties . . . is the most basic factual inquiry in any lawsuit." *Callahan v. Schoppe, 864 F.2d 44, 46-47 (5th Cir. 1989).* Classen claims that it did all it could to ascertain the proper Kaiser Defendants but ultimately failed because Kaiser's counsel refused to disclose which Kaiser entities administer vaccinations. Classen's explanation is inadequate as defendants are not required to permit prelitigation discovery. *Id.*

Moreover, [HN16] in patent infringement cases, a party conducting a prefiling inquiry must:

> at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused [practice] and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted. The presence of an infringement analysis plays the key role [*14] in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under *Rule 11.*

*View Eng'g, 208 F.3d at 986.* Classen has not performed an infringement analysis, nor offered an explanation for its failure. This cannot be found to constitute a reasonable prefiling inquiry for the purpose of filing patent infringement claims. *Id.* Accordingly, the Kaiser Defendants' motion for sanctions will be granted.

The Kaiser Defendants request that: (1) the Court order the Plaintiff to reimburse them for costs incurred in bringing their *Rule 11* motion and defending this suit; (2) the claims against them be dismissed; and (3) the Plaintiff be permitted to refile only if it can establish and document in the Complaint a prima facie basis for its allegations.

[HN17] *Rule 11* attempts to discourage the needless filing of groundless lawsuits. *Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 988 (4th Cir. 1987).* In imposing sanctions, the court should apply a sanction that furthers *Rule 11*'s purpose and is the least severe sanction adequate to such purpose. *Yorkridge-Calvert Sav. & Loan Ass'n v. Dir. of the Office of Thrift Supervision, 1990 U.S. Dist. LEXIS 18623, *18,* [*15] *(D. Md. 1990) (citing Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 878 (5th Cir. 1988)).* The dismissal of Classen's claims against the Kaiser Defendants should be sufficient to discourage Classen from filing additional pleadings before conducting a reasonable prefiling inquiry.

CONCLUSION

For the reasons discussed above, the motions to dismiss will be granted, and the motion for sanctions will be granted in part and denied in part.

July 22, 2005

Date

William D. Quarles, Jr.

United States District Judge

ORDER

For the reasons discussed in the accompanying Memorandum Opinion, it is, this 22nd day of July 2005, ORDERED that:

1. the Amended Complaint BE, and HEREBY IS, DISMISSED as to Defendant Chiron Corporation;

REDACTED VERSION – PUBLICLY FILED

2005 U.S. Dist. LEXIS 17075, *

2. Counts I, II, and IV of the Amended Complaint BE, and HEREBY ARE, DISMISSED as to Defendants GlaxoSmithKline and Biogen IDEC;

3. the Kaiser Defendants' motion for sanctions BE, and HEREBY IS, GRANTED IN PART and DENIED IN PART;

4. the Kaiser Defendants' motion for sanctions BE, and HEREBY IS, GRANTED to the extent it seeks dismissal of the claims against the Kaiser Defendants;

5. the Kaiser Defendants' [*16] motion for sanctions BE, and HEREBY IS, OTHERWISE DENIED;

6. the Amended Complaint BE, and HEREBY IS, DISMISSED WITHOUT PREJUDICE as to Defendants Kaiser Foundation Health Plan, Inc., Kaiser Permanente Ventures, Kaiser Permanente International, Kaiser Permanente Insurance Company, The Permanente Federation, LLC, The Permanente Company, LLC, The Permanente Foundation, The Permanente Medical Group, Inc., Kaiser Foundation Hospitals, and Kaiser Foundation Added Choice Health Plan, Inc.; and

7. the Clerk of the Court shall send copies of this Memorandum Opinion and Order to counsel for the parties.

William D. Quarles, Jr.

United States District Judge